Graves, J.:
Defendant Donner, being assignee from one Matthias Hess of what purported to be a recorded mortgage, executed by complainant and her .husband, Charles Frickee, to said Hess, May 19, 1874, on lot one hundred and twenty-four of Beeson’s addition to Niles, to secure payment of two hundred dollars on or before September first, 1874, with interest at ten per cent., proceeded to foreclose the same at law, and pursuant to the proceedings had for that purpose, the premises were sold to defendant in May, 1875, and a deed was made by the sheriff to him and filed with the register of deeds. On the first day of July thereafter complainant filed her bill to set aside these proceedings and cancel the mortgage. A note which was not negotiable was made by Mrs. Frickee and her husband to Hess, of even date with the mortgage, and for the same debt. The mortgage referred to it, and it went into Donner’s hands as an accompanying security.
The bill alleged that this note was given for the individual debt of complainant’s husband, and that in fact she was a mere surety; that at the date of the transaction she owned lots one hundred and twenty-three and one hundred and twenty-four of Beeson’s addition to Niles, and that lot one hundred and twenty-four was occupied as the homestead, while the other lot had no buildings, and was vacant; that it was agreed be *146 tween Hess, herself and husband, that she would join her husband in the note, and would also join him in a mortgage on lot one hundred and twenty-three as further security; that she was not able to read or write,-and one Barron, a justice, came to her house with the note and mortgage for her to execute,— her husband having previously signed, — and seeing her husband’s signature.to the mortgage, she signed it in the belief that it covered lot one *liundred and twenty- - three, and not lot one hundred and twenty-four, and that she did not become aware that it described lot one hundred and twenty-four until Donner’s advertisement to foreclose appeared in the newspaper; that she never agreed or intended to mortgage lot one hundred and twenty-four; that in fact the mortgage was drawn originally upon lot one hundred and twenty-three, and in that shape signed and acknowledged by her husband and witnessed by the justice and one Kellogg, and that afterwards and before her signature, and at request of Hess and with her husband’s consent, it was so altered as to ■describe lot one hundred and twenty-four instead of lot one hundred and twenty-three, and was then signed by her in presence of the justice, who then witnessed her execution, and that no other person witnessed it.
The bill further alleged that Donner gave time to complainant’s husband.
Donner answered, and proofs having been taken, the court below found that the mortgage was executed on the part of complainant by mistake and was fraudulent, and decreed that it should be canceled, and that the foreclosure proceedings were fraudulent and void.
The claim that complainant was caused to make the mortgage on lot one hundred and twenty-four, either through mistake or fraud, rests on her testimony and that of her husband, and their statements of what occurred are not very consistent or convincing. She swears that she had no talk with her husband or with Hess about mortgaging lot one hundred and twenty-four, but consented to mortgage lot one hundí od and •twenty-three, and that the justice called but once for her signature, and that she had no talk afterwards with her husband *147 about tbe transaction until tbe notice by Donner appeared in tbe paper. Hess had been stopping more or less at complainant’s, and had lent Frickee the money, and he swears that he urged payment or security with much pertinacity, and that Mrs. Frickee repeatedly expressed her willingness to mortgage lot one hundred and *twenty-four to get rid of the importunity, and told her husband to have such a mortgage prepared. The testimony of this witness appears reasonable and credible, but it is not necessary to repeat the whole of it. The justice swears that the mortgage was first drawn upon lot one hundred and twenty-three, and in that shape executed by Frickee and his wife, and acknowledged and witnessed as to Frickee by Kellogg and himself; but that Hess, finding out the mortgage covered the vacant lot, and not lot one hundred and twenty-four, upon which the buildings were, was dissatisfied, and that Frickee then consented that the description should be changed from one hundred and twenty-three to one hundred and twenty-four, which was done, and that he then called a second time on complainant and noted the alteration on the mortgage, and that she then re-executed it.
She did not write, but made her mark, and two marks appear. That Hess should have been desirous to have the mortgage placed on the lot containing the buildings, rather than on the other, and that complainant and her husband should have desired to be relieved of his urgency by passing to him a mortgage on the vacant premises, is quite within belief. Lot one hundred and twenty-four was worth some fourteen hundred dollars, and was subject only to a mortgage of five hundred dollars. The vacant lot, however, had been purchased not long before for three hundred dollars, and according to the weight of evidence was worth not much more at the time in question, and was then burdened by an incumbrance of about one hundred and forty dollars. There are some facts which look as though complainant and husband were not unwilling that Hess should accept a mortgagé on the vacant lot in the belief that it was on the other.
On the whole, the weight of evidence is against complainant’s charge that she mortgaged lot one hundred and twenty- *148 four either under mistake or imposition. The connection of her husband with the mortgage is. of no consequence. She claims that she owned the property, and the answer ^admits it, and if she did, she was able to mortgage it as though she were sole. Whatever irregularities or defects there may have been in the execution or acknowledgement on Frickee’s part cannot impair the security. The claim that Donner gave Frickee indulgence on the note is of no consequence. Without stopping to consider whether,if Donner had bound himself to give time the complainant could on that account defend against proceeding on the mortgage, it is sufficient to say there was no binding arrangement for further time.
There is no other question to affect the case. The mortgage was good in equity as against Mrs. Frickee. But we think under the circumstances she is entitled to redeem in reasonable time, and must be allowed to do so.
The decree below must be reversed, and the cause remanded, with directions to enter a decree for redemption and for such further proceedings as the case shall require.
The defendant must have costs of both courts.
The other justices concurred.