PHILOMENA LeMAY v. EMIL C. WICKERT.

*Married woman—Deed—Consideration.*

1. A deed executed by a married woman in payment of her husband's debt is valid.

2. Complainant filed a bill to set àside her deed executed, as she claims, in payment of her husband's debt, but by the defendant applied in reduction thereof. And it is held, on a review of the evidence, that she failed to prove her case as alleged.

Appeal from Delta. (Stone, J.) Argued December 13, 1893. Decided February 6, 1894.

Bill to set aside a deed. Defendant appeals. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Clark & Pearl*, for complainant, contended:

1. If Mrs. LeMay was given to understand by the statement of her husband, and the silence of Wickert when such statement was made in his presence, that by the giving of this deed her husband was to be released from old indebtedness, the defendant is estopped from denying that such was the agreement; citing *Truesdail v. Ward*, 24 Mich. 117; *Heyn v. O'Hagen*, 60 Id. 150; *Pearson v. Hardin*, 95 Id. 360; *Hill v. Epley*, 31 Penn. St. 331; *Henshaw v. Bissell*, 18 Wall. 255; *Brant v. Iron Co.*, 93 U. S. 326; *Jackson v. Waldron*, 13 Wend. 208.

2. The consideration totally failed, and was a complete fraud and misrepresentation, and it is very doubtful whether the defendant, having committed a fraud, can be protected even as to the amount paid in a court of equity, as the universal rulings are that when fraud is committed a court of equity will leave a party committing the fraud in the predicament in which he has placed himself, and will not help him out; citing *Nellis v. Clark*, 4 Hill, 424; *Osborne v. Moss*, 7 Johns. 161; *Armstrong v. Toler*, 11 Wheat. 258.

3. A married woman cannot be held liable upon her note without connecting her with the consideration, as she has no general power to make notes or other contracts; citing *Schlatterer v.*

*Nickodemus,* 51 Mich. 626; *Ross v. Walker,* 31 Id. 120; *Johnson v. Sutherland,* 39 Id. 580; and she is not liable on the covenants in her husband's deed; citing *Carley v. Fox,* 38 Mich. 387; *West v. Laraway,* 28 Id. 466; *Harvey v. Galloway,* 48 Id. 531; and a wife's deed is not enforceable as an equitable mortgage where the arrangement made was simply to secure the husband's debt; citing *Harvey v. Galloway,* 48 Mich. 531; and, as to the invalidity of the deed in question, see *Terry v. Tuttle,* 24 Mich. 206; and, as bearing upon the question of the burden of proof, see *Insurance Co. v. Bank,* 68 Mich. 116.

*John Power* (*Cahill & Ostrander,* of counsel), for defendant.

HOOKER, J. The complainant, a married woman, filed her bill of complaint against the defendant to set aside a deed made and delivered by her some years before. Her claim, as made upon the trial, was that her husband was indebted to the firm of Bittner, Wickert & Co., of which the defendant was a member, to the amount of about $3,000, and that she deeded the premises in controversy to defendant, Wickert, subject to a mortgage of $2,000, upon his promise to cancel the debt and surrender the notes representing such indebtedness, upon which notes she appears to have been an accommodation indorser. It appears from the testimony that, at the time the deed was delivered, the defendant indorsed $1,000 upon the larger of the two notes. Some two years later an action was commenced by defendant's firm upon these notes against complainant's husband and herself, which resulted in a judgment for the amount of the notes (less the indorsement of $1,000) against the former, the action failing as against complainant, upon the ground that she was a surety for her husband, and that the notes were invalid as to her. She thereupon began this suit.

An examination of the bill shows that she nowhere avers that the defendant made the promise to her that seems to have been relied upon at the trial. She alleges that she

gave the deed without receiving any consideration for it from the defendant or any one else, and proceeds to give what she "alleges to be the facts," viz.: That about the date of the deed her husband came to her, and said that the defendant held an old note against him to the amount of over $1,500, and interest from the date of its execution, some time in 1884, and that the defendant had agreed that if he would pay to the defendant the sum of $1,000, or procure a deed from the complainant to said defendant of the premises in controversy, he (the defendant) "would cancel and discharge *all of his claim to said old note, and old indebtedness* which had accrued prior to the running account then existing between himself and said defendant, meaning the old note referred to." Thereupon she executed the deed, fully believing that defendant would carry out the promise to cancel the said note of her husband, provided she conveyed to him the said lot, and which her husband had informed her, as aforesaid, the said defendant had agreed to do. She then alleges that, after the deed was executed and delivered to her husband, she inquired, after he had taken away the deed to the defendant, whether he had received the note or notes in return, and he informed her that the defendant claimed that the notes were in the bank, and he would get them and deliver them to him; that she frequently spoke to her husband about the matter, who informed her that he had endeavored frequently to get the notes from the defendant, but was unable to get them. She then alleges that the defendant sued her husband for the full amount of the notes, less a pretended indorsement of $1,000, which defendant claimed to be made in consideration of the deed in question, and continues: "Thus your oratrix is informed and believes, and therefore charges the fact to be, that the said defendant disregarded his said promise to her husband, based upon which promise, so stated to her, she executed the

said deed." After alleging the judgment against her husband, the bill alleges that the deed was without consideration and void, as complainant was a married woman, and it was made at the request and earnest solicitation of her husband, without consideration.

It will be observed that the bill states that the deed was given upon the statement of the husband that an old note of $1,500 was involved, and that it was *the interest* of Wickert in the same that was to be canceled. The case is sought to be proved by the testimony of complainant and her husband. Royce, the notary, was sworn, but could remember nothing about the transaction. Mr. Le May says that the debt was owing to the firm of Bittner, Wickert & Co., and that Wickert agreed to cancel and surrender the notes if he would procure the deed. He does not relate the representations he made to his wife, but gives a conversation with Wickert, substantially as alleged in the bill. He says that he spoke to his wife about it, and she said she would sign the deed if Wickert would cancel the notes. He also says that Wickert was present when the deed was signed, in which his wife corroborates him. He mentions two other witnesses to that transaction, but they were not called. He says that on the way to the house he spoke to Mr. Wickert about the notes, and he said he would get them the next day for him, and that, after he got to the house, his wife asked him (Le May) if he had the notes, and he told her no, that Wickert would get them the next day; and the following conversation occurred:

" *Q.* Was Mr. Wickert there when the conversation took place?
"*A.* Yes, sir.
" *Q.* Right in the same room?
"*A.* Yes, sir.
" *Q.* And he heard it?
"*A.* Yes, sir; I presume he did.
" *Q.* What did Mrs. Le May say to that?

"*A*. She said it wasn't a very safe way of doing business. I should have got the notes before I gave him the deed.

" *Q*. What did you say, if anything?

"*A*. I says, 'I guess he's all right. He will hand them back tomorrow; they will be no account to him.'

" *Q*. Was that before she signed and delivered the deed to him?

"*A*. Yes, sir; it was before she signed it.

" *Q*. What did she say when you made that remark to her?

"*A*. She didn't like to sign it; and I told her there was no danger; she might sign it.

" *Q*. Did she then sign it with that statement?

"*A*. Yes, sir; she signed the deed.

" *Q*. Did Mr. Wickert, at that time, make any objection to the statement that he was to deliver up those notes in consideration of that deed?

"*A*. He made that agreement with me.

" *Q*. Did he say that wasn't the agreement, when you told your wife it was?

"*A*. No, no; he never said it wasn't our agreement; no, no.

" *Q*. Did Mr. Wickert say anything when she asked about these notes?

"*A*. He said he would hand them back to me the next day.

" *Q*. Did he get the deed at that time from your wife to this lot?

"*A*. Yes, sir.

" *Q*. What was done the next day,—did you have any talk about the notes the next day?

"*A*. Yes, sir; I went in there, and asked him for those notes. He said he didn't have them. He said when he would go to the bank he would get them.

" *Q*. Did you ask him, after that, about the notes?

"*A*. A good many different times.

" *Q*. Did he give them to you?

"*A*. He never did, sir.

" *Q*. What reason did he give for not giving them up?

"*A*. He gave me no reason at all; he kept putting it off, and at last I got tired of asking him."

Mrs. Le May's version of the transaction is somewhat different.

"Q. How came you to make this deed?

"A. Mr. Le May asked me to do it, and Mr. Wickert would cancel his debt and notes that he had against him if I signed it.

"Mr. Power: I object to this answer of the witness, covering a conversation between herself and husband in the absence of Mr. Wickert.

"Q. Now, at the time you made this deed, was there anything said by you, or any person, about these notes, when Mr. Wickert was there?

"A. I spoke to Mr. Le May—

"Mr. Power: I object, unless it appears that Mr. Wickert was present.

"Q. She testified that he was.

"A. Yes; I asked Mr. Le May if he had brought those notes.

"Q. What did Mr. Le May say?

"A. He said that he would go down with Mr. Wickert, and he would get them; that he promised to give them to him.

"Q. Did he state why he hadn't got them at that time?

"A. No, sir; he didn't; not at that time.

"Q. What did he say, if anything?

"A. Well, I said that was no way of doing business, but still I signed the contract.

"Q. You signed the contract relying upon the promise to deliver those notes and cancel the indebtedness?

"A. Yes, sir.

"Mr. Power: I object to the last question as leading.

"Q. Did you receive, yourself, any pay or consideration for making that deed, except what you have now stated?

"A. No, sir; not a penny.

"Q. Now, after this deed was made, to whom was it delivered?

"A. Mr. Wickert.

"Q. There at the house?

"A. Yes, sir.

"Q. When you asked for those notes, where were they, if Mr. Le May had got them? Didn't Mr. Wickert say anything himself?

"A. Not that I remember. I was not addressing myself to Mr. Wickert; I merely asked Mr. Le May. I don't remember whether Mr. Wickert said anything or not.
*    *    *    *    *    *    *    *    *    *    *

"Mr. Power: You say you signed this deed for lot 8,

block 64, of the city of Escanaba, at the request of your husband, Joseph Le May?

"*A.* Yes, sir.

" *Q.* And for his benefit, in order to have his business get along?

"*A.* Yes, sir; that is, have the old indebtedness,—for the old standing debt.

" *Q.* You didn't have any talk with Mr. Wickert about this matter?

"*A.* No, sir; I never had any talk with him.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

" *Q.* What was your object in signing the deed to Mr. Wickert?

" *A.* Merely to help Mr. Le May out, under his solicitations.

" *Q.* To cancel his indebtedness?

" *A.* Yes, sir.

" *Q.* Had you any other motive or inducement?

"*A.* No, sir.

" *Q.* Did you yourself owe Bittner, Wickert & Co. anything?

"*A.* No, sir."

The defendant contradicted Le May in all essential particulars, except as to what occurred at the house when the deed was signed. His attention does not appear to have been called to that. Upon his failure to contradict Le May in this respect the circuit judge appears to place much stress, but we cannot consider it controlling. Mr. Le May's testimony does not impress us as being entitled to greater credence than that of the defendant. His wife says that she does not remember that Wickert said anything when she spoke of the notes; that she was not addressing him, but merely asked Mr. Le May. She seems not to have said anything to Mr. Wickert afterwards about it, though Le May says he asked him frequently. So long as matters ran along, and he was permitted to purchase goods upon credit, these parties did not insist upon the notes. When sued, we may reasonably suppose that Le May would have made this defense if he had any faith in

it. Perhaps he did, but, if so, the jury evidently did not credit it. It may be truly said that neither his failure to make such defense nor the disregard of it by the jury could bind the complainant, but it tends to corroborate our opinion of the value of Le May's testimony. After looking at all the evidence, we think that the complainant has failed to prove her case as alleged, and that she yielded to the importunities of her husband to aid him. The property was earned by him with such assistance as the wife rendered. It was placed in her name, but she admits his interest in it. At the time of the making of the deed he was insolvent, and this property, worth about $2,500 to $2,800, had a mortgage amounting to about $2,100 upon it; and he was still, and for some time after, dependent upon Bittner, Wickert & Co. for credit. It was competent for the complainant to deed her property to whom she chose, and though it was as security for, or in payment of, her husband's debt, the deed was valid.

The decree of the circuit court will be reversed, and complainant's bill dismissed, with costs of both courts.

The other Justices concurred.