FEDERAL BOND & MORTGAGE CO. *v*. GOLDMAN.

MORTGAGES—FORECLOSURE—HUSBAND AND WIFE.

> In a suit to foreclose a mortgage which one of the mortgagors, a married woman, claimed was void as to her because her signature thereto was obtained by a promise to her by the mortgagee to pay her one-half of the proceeds of the mortgage, which promise was not kept, the finding of the court below that no such promise was made, *held*, sustained by the record.[1]     BIRD, C. J., and STEERE and McDONALD, JJ., dissenting.

Appeal from Wayne; Perkins (Willis B.), J., presiding.     Submitted April 9, 1926.     (Docket No. 56.) Decided July 22, 1926.     Rehearing denied October 4, 1926.

Bill by the Federal Bond & Mortgage Company against Henry S. Atlas, Bessie Goldman and others to foreclose a trust mortgage.     Defendant Goldman filed a cross-bill to set aside the mortgage as to her one-half interest.     From a decree for plaintiff, defendant Goldman appeals.     Affirmed.

*Stevenson, Butzel, Eaman & Long* (*Herbert J. Newman* and *Charles B. Marks*, of counsel), for plaintiff.

*William Henry Gallagher* (*William H. Kaplan*, of counsel), for appellant.

McDONALD, J. (*dissenting*).     The plaintiff has brought this action for the foreclosure of a trust mortgage given by defendants Atlas and Goldman, to secure an issue of $50,000 of 6% bonds.     The mortgage covers certain real estate, called in the record the Catherine street property, in the city of Detroit, Michigan.     On August 25, 1920, the defendant Henry S.

---

[1]Mortgages, 27 Cyc. p. 1619.

Validity of encumbrance by husband and wife of property held by the entireties to secure the individual debt of the husband, see note in 66 L. R. A. 632.

Atlas by written application applied to the plaintiff company to float a bond issue of $50,000, to be secured by a trust mortgage to the plaintiff as trustee on the Catherine street property. The application represented that plaintiff owned the fee and the abstract did not disclose any other interest. But while the negotiations were pending the plaintiff learned that the defendant Bessie Goldman owned a half interest, and it was decided that it was necessary to secure her signature to the mortgage. On the part of the plaintiff the transaction in question was carried on by Mr. George D. Lyle, who at that time was employed in its mortgage department. He claims to have secured Bessie Goldman's signature to the mortgage without any promise to pay to her any part of the $50,000, and without any notice from her that defendant Atlas should not be paid the entire amount of the loan. The transaction was completed. The bonds were approved and sold, and all of the proceeds paid to defendant Henry S. Atlas. There was default in the payment of interest and principal due on September 1, 1921. On January 19, 1922, the entire unpaid principal was declared due and payable in accordance with the terms of the trust mortgage. On the same day this bill for foreclosure was filed. The National Bank of Commerce of Detroit was made a party defendant because it holds a mortgage on the same premises, subordinate to that of the plaintiff. This mortgage was not contested. The only contest is over the contention of defendant Bessie Goldman, who claims that she signed the trust mortgage upon the promise of Mr. Lyle that she would be paid one-half of the amount loaned, or $25,000, and that therefore as to her one-half interest in the property the mortgage was void. In her cross-bill she asked that a decree to that effect be granted, and that she be permitted to record it with the register of deeds of Wayne county, Michigan. At the conclusion of the

proofs the circuit judge entered a decree dismissing her cross-bill and directing a foreclosure of the mortgage as prayed for by the plaintiff. From this decree Bessie Goldman has appealed.

The briefs of counsel present several interesting legal propositions, but we think that under the circumstances the only question involved is one of fact. The record shows that Bessie Goldman either signed the mortgage under a distinct agreement with the plaintiff that she should be paid $25,000 out of the proceeds of the loan, or that she consented to its payment to Henry S. Atlas without any promise of benefit to her. With this view as to the issue, we will consider only the question as to whether her signature was obtained by a promise to pay her $25,000.

Originally Bessie Goldman was the owner of a two-fifths interest in this property. She contracted to purchase the balance for $14,000. The defendant Henry S. Atlas is her uncle. She applied to him for money with which to complete the purchase. He agreed to advance the $14,000 on condition that she would secure the same by a mortgage for $15,000. In order that the entire title might rest in Bessie Goldman and her husband by the entireties, she conveyed to Atlas her three-fifths interest, and when he paid the $14,000 he took the title to the remaining two-fifths with the understanding that he would reconvey to defendant Goldman and her husband, and that they would give back a mortgage of $15,000. But before this was done Atlas conceived the idea of purchasing a half interest in the property. At that time there was a building on the land which formerly had been used for a wholesale liquor house. It was agreed by the parties that Mr. Atlas should have a half interest on condition that he invest $50,000 in improving the building. Under this agreement the building was remodeled and converted into a 28-room hotel and five stores. The remodeling was completed

before Atlas made application to the plaintiff for the loan. There is some dispute about this, but Louis Goldman, who had charge of the work of remodeling, testifies that it was entirely finished before the application for the loan was made; and there is other evidence tending to show that Mr. Atlas was financially embarrassed and wanted the money for other purposes than that of remodeling the building. Louis Goldman is the husband of the defendant Bessie Goldman. When the Goldmans learned that Mr. Atlas had agreed to give plaintiff a mortgage on the entire property, Louis Goldman went to Mr. Lyle and notified him of his wife's interest and told him that Mr. Atlas was not authorized to mortgage it or to receive any money for her. After that negotiations were carried on with a view to securing Mrs. Goldman's signature to the mortgage, and she says that it was only secured on Mr. Lyle's promise that she would receive half of the proceeds of the loan. As to whether such a promise was made the testimony is in dispute. Mr. and Mrs. Goldman affirm it. Mr. Lyle denies it. We think that there are some facts and circumstances which tend to corroborate the testimony of the Goldmans.

If Mrs. Goldman signed the mortgage without any consideration moving to her and permitted the proceeds of the loan to be paid to Mr. Atlas, she would be giving him a one-half interest in the property for nothing. Mr. Goldman was handling the matter for his wife. The record shows that he was a man of experience and was perfectly capable of properly guarding her interests. It is hardly conceivable that he would permit her to sign the mortgage under the circumstances, as claimed by Mr. Lyle. The evidence is that the application for the loan was made August 25, 1920. The trust mortgage was made on September 1, 1920, but was not signed until September 30th. Mrs. Goldman's name was not mentioned in

the mortgage when it was first written, but Mr. Lyle learned of her interest and was advised by the plaintiff's attorneys that it would be necessary to secure her signature.   He discussed the matter with Mr. Goldman on several occasions and finally, after Mr. Atlas and his wife had signed the mortgage and Lyle had left it for record with the register of deeds, he went with Goldman to the Goldman home and after a conversation with Mrs. Goldman, in which she says it was agreed that she would receive $25,000, the three of them drove to the register of deeds' office where Bessie Goldman's name was inserted in the mortgage as one of the mortgagors, and she signed and acknowledged it.   She did not sign the bonds. In the face of these facts Mr. Lyle testified:

"I did not ask her.   I don't know that there was any formal asking of it.   It was presented to her and she signed it."

This testimony is not consistent with the established facts and cannot be accepted as true.   He did know that on the advice of her husband she was standing out against signing the mortgage.   By his own appraisal he knew that the property was worth $100,000, and that Mrs. Goldman's interest was $50,000.   He had been notified that Mr. Atlas had no authority to mortgage her interest or to receive any money for her.   He had been told by Mr. Goldman that Atlas had suffered heavy financial losses and could not pay the indebtedness secured by the mortgage.   He knew that Atlas was in no position to demand payment of the entire loan, that he had no right to more than half of it; and that it made no difference to his company who got the money so long as it got the security signed by all of the parties in interest.   He had no information that would give him any reason to believe that Mrs. Goldman would sign that mortgage and allow Atlas to receive the money.   He knew that

she had stood out against it for a month; that she had nothing to gain and everything to lose by signing without receiving half of the proceeds of the loan. Notwithstanding these facts, Mr. Lyle testifies that she yielded and signed without any inducement and without "formal asking." His story is unreasonable and highly improbable. From a careful consideration of the evidence, we cannot avoid the conclusion that Mr. Lyle made some promises of benefit to Mrs. Goldman as an inducement for her to sign the mortgage.

It is claimed that he had no authority to make any such promises, but that is not important. If his promise to pay her $25,000 was the inducement for her signing and the promise was not kept, there was a total failure of consideration, and the mortgage would not be binding on her.

We think that the evidence supports the defendants' theory of this case; that the mortgage is void as to Bessie Goldman, and therefore not enforceable against her interest in the property. A decree should be entered in this court in accordance with this opinion. And as the plaintiff now has a deed of the entire premises and holds the interest of Bessie Goldman in trust for her, the cause should be remanded for an accounting.

The decree of the circuit court should be reversed, with costs to defendant Bessie Goldman.

BIRD, C. J., and STEERE, J., concurred with McDONALD, J.

SHARPE, J. In my opinion the only question presented on this record is whether the signature of Mrs. Goldman to the trust mortgage was induced by a promise to pay her one-half of the proceeds thereof. She made no claim thereto until this suit to foreclose the mortgage was begun. In the meantime, she and

her husband had collected their one-half of the rentals derived from the property.    The trial court heard and saw the witnesses.    He concluded that no such promise had been made.    I concur with Mr. Justice WIEST in so holding.

There can be no question in this State of the right of a married woman to mortgage her property to secure the debt of another.    *Watson* v. *Thurber,* 11 Mich. 457; *DeVries* v. *Conklin,* 22 Mich. 255; *Frickee* v. *Donner,* 35 Mich. 151; *Damon* v. *Deeves,* 57 Mich. 247; *Wilson* v. *Wilson's Estate,* 80 Mich. 472; *LeMay* v. *Wickert,* 98 Mich. 628; *Just* v. *Savings Bank,* 132 Mich. 600.

The other questions presented have been considered, but in my opinion do not merit discussion.

The decree should be affirmed, with costs to plaintiff.

SNOW, FELLOWS, and CLARK, JJ., concurred with SHARPE, J.

WIEST, J.    I am not in accord with the opinion prepared by Mr. Justice MCDONALD.    Antedating the mortgage there was an agreement between the owners of the property that it should be improved at a cost of more than $40,000.    It was so improved by Henry S. Atlas, owner of a half interest therein, and defendant Bessie Goldman has paid nothing toward the expense thereof, and in fact has expended but $2 during the course of her ownership of a half interest therein. The husband of Mrs. Goldman, who managed all the business, testified with reference to the improvements on the property:

"I done all the altering.    I was the contractor employing the contractor material.    I got the money to pay the first bills from Mr. Atlas.    We had no written agreement with him, it was a verbal agreement.    *    *    *    Mr. Atlas and I decided to remodel this building.    *    *    *    That was about a year if not

235—Mich.—37.

longer before we got a mortgage from the Federal Bond & Mortgage Company.

"*Q.* And then by verbal agreement between Mr. Atlas and your wife they were to be the owners of this property?

"*A.* Each owned one-half. No paper of any kind was made between myself, my wife and Mr. Atlas. So far as the records are concerned Mr. Atlas was the sole owner of this property, but in reality he only owned half.

"Then we decided to remodel this building at an expenditure of about $50,000. Then Mr. Atlas advanced some money. I did not advance any money at all on the remodeling nor did my wife. So, in addition to the $14,000, Mr. Atlas advanced in the neighborhood of $30,000, somewhere around there. I can't tell exactly. Neither I nor my wife advanced any money towards the remodeling of this building. All the money that went into this building or all the moneys that were expended in connection with the remodeling of this building were advanced by Mr. Atlas. There was expended by Mr. Atlas in connection with the remodeling of this building in the neighborhood of $40,000. No part of the $40,000 was advanced either by myself or my wife. So Mr. Atlas had in this building $14,000 that he originally paid and in the neighborhood of $40,000, making a total of $54,000, about that. And my wife paid on this building only $2 in cash. I think I kept books at that time. I have not got them now."

This mortgage too neatly dovetails with the cost of such improvement, toward which defendant, as a half owner, should pay half and by the mortgage intended to meet her half, to lead me to place credence in the claim that she was to be paid $25,000 if she signed the mortgage. There is no evidence that she wanted to borrow money for any other purpose. I am satisfied the mortgage for $50,000 was given to pay for the improvements.

The decree in the circuit should be affirmed, with costs to plaintiff.