## NATIONAL LUMBERMAN'S BANK v. MILLER.

1. BILLS AND NOTES—HUSBAND AND WIFE—CONSIDERATION—BURDEN OF PROOF.

In an action on a promissory note made by a wife and indorsed by her husband, purporting to be for value received, plaintiff makes a *prima facie* case, by introducing the note in evidence, and is not bound, in the first instance, to prove such a consideration as would bind the wife.

2. SAME—QUESTION FOR JURY.

In such action, evidence that the wife applied for the loan without offering security, saying that she did not like to ask her husband to indorse for her, but that she finally gave such indorsement on being advised that it would be necessary, is sufficient to justify a finding that she obtained the money under a representation that it was for the benefit of her separate estate.

3. SAME—ESTOPPEL.

If a wife obtain money on her note by representing that it is for her separate estate, she will not be heard to defend on the ground that her husband persuaded her to take that means of obtaining money for him.

4. SAME—LIABILITY OF WIFE.

A wife is liable on a note given by herself and husband in so far as the consideration therefor was for the benefit of her separate estate.

5. SAME—EVIDENCE.

In an action against a husband and wife on a promissory note, defended on the ground that it was given solely for his benefit,

evidence of conversations between them, not shown to have been in the presence of, or communicated to, plaintiff, is inadmissible.

6. SAME.

But in such case a searching inquiry into the business relations between defendants, and the amount of property and extent of business of each, is allowable to plaintiff.

Error to Muskegon; Russell, J. Submitted October 8, 1902. (Docket No. 17.) Decided October 28, 1902.

*Assumpsit* by the National Lumberman's Bank against Isabella G. Miller and John A. Miller upon a promissory note. From a judgment for plaintiff, defendants bring error. Affirmed.

This suit is brought upon a promissory note for $4,045, dated December 30, 1899, with defendant Isabella as maker and defendant John as indorser. With the plea of the general issue defendant gave notice that she was the wife of her codefendant, and that said note was for money obtained for his individual use. The defendants are husband and wife. Isabella owned property in her own right to the amount of about $15,000. In 1892 she borrowed $200 of the plaintiff, for which she gave her individual note. It was renewed from time to time, and payments made until the amount was reduced to $145. In February, 1893, she obtained a loan from the bank of $1,000, for which she gave her note. When she applied for the loan, the cashier informed her that some security would be required, and spoke to her about procuring the indorsement of Mr. Miller. She stated that she did not like to ask him, but she brought a note signed by herself, with Mr. Miller's indorsement, and obtained the money at the bank. This note also was renewed from time to time. John A. Miller also had individual notes at the bank. All these notes were, on November 18, 1896, consolidated into a single note for $4,070, signed by her and indorsed by him. This was renewed from time to time, interest

and small payments made until December 30, 1899, the date of the note in suit. The court directed a verdict for plaintiff for the amount of $145, which was a part of the consideration of the note in suit, holding that it was Mrs. Miller's personal matter. He left it to the jury to determine whether, under the proofs, the $1,000 was obtained upon representations by Mrs. Miller that it pertained to her separate estate. Upon this point the jury found for the plaintiff. The judge instructed the jury that defendant Isabella was not liable for the balance of the note. The jury rendered a verdict for plaintiff for $1,287.35.

*W. J. Turner* (*S. H. Clink*, of counsel), for appellants:

Cited, in support of the proposition that a married woman's note cannot be presumed valid, *Kenton Ins. Co.* v. *McClellan*, 43 Mich. 564 (6 N. W. 88); *Schlatterer* v. *Nickodemus*, 51 Mich. 626 (17 N. W. 210); *Fechheimer* v. *Peirce*, 70 Mich. 440 (38 N. W. 325).

*Smith, Nims, Hoyt & Erwin*, for appellee.

GRANT, J. (*after stating the facts*). 1. Plaintiff made its *prima facie* case by introducing the note in evidence. Defendants thereupon moved the court to direct a verdict for the defendants on the ground that the plea and notice showed that the defendants were husband and wife, and the duty rested upon the plaintiff to prove such a consideration as would bind her. Upon its face the note was hers, and it imported a consideration paid to her. It was indorsed by her husband. There was no presumption against the legality of such a note. The burden rested upon the defendant to prove facts which would relieve her from liability. The motion was properly overruled.

2. The defendants then entered into the merits of the controversy, and testimony was taken; the cashier of the bank and Mr. and Mrs. Miller giving testimony. The cashier gave the following testimony in regard to the transaction:

"Mrs. Miller came and asked me if she could borrow a thousand dollars from the bank. I says, 'What on?'

and she says, 'On my note.' I says, 'On what security?'
She says, 'Ain't my note good?' I says, 'I presume it
is, Mrs. Miller, but we are in the habit of having some
collateral security or indorser on notes of any size.'
'Why,' she says, 'you didn't ask me for any security on
that $200.' I said, 'That was a small amount, and I
knew you were all right; but I think on an amount of this
size our people would want some security.' She says, 'I
don't know what security to give you; haven't any to give
you that you would take.' I says, 'Could you give us an
indorser?' She says, 'I don't know who to ask to indorse.'
I says, 'Wouldn't Mr. Miller indorse for you?' She says,
'I presume he would if I would ask him, but don't want
to ask him to indorse my note.' I took her application
down on the book without indorser, and says: 'If you
want me to submit your application in this shape, will
submit it, but am afraid our people will not take it. Think
Mr. Miller would not hesitate to indorse the note, and, if
he would, think they would take it.' She says, 'You may
put it down with Mr. Miller's name;' and I put it down,
and it was passed upon by the committee favorably. The
note is dated on the 24th of February, 1893, the same date
of the application."

He further testified that he relied upon her statements in
making the loan, and understood that the money was
obtained for her separate estate. Mrs. Miller did not deny
this testimony of the cashier. She did not tell the cashier
that the money was for her husband. If she obtained the
money representing that it was for herself individually,
and for her separate estate, she will not be heard to defend
on the ground that her husband persuaded her to take this
course, and to obtain the money for him. She herself tes-
tified that she was under no threats or coercion. It is
evident from her own testimony that she gave the cashier
to understand that she was acting in her individual capac-
ity, and desired the money for her own use in regard to
her separate estate. We think the court committed no
error in leaving the question to the jury.

3. Conversations which took place between the defend-
ants were incompetent, since no attempt was made to
show that they were either in the presence of, or were
communicated to, the cashier of the bank.

4. The court allowed a wide latitude to the plaintiff in inquiring into the business relations between the defendants, and the amount of property and extent of business carried on by each. We think the case was one justifying such inquiry, and that the court committed no error in admitting such testimony.

Judgment is affirmed.

Hooker, C. J., Moore and Montgomery, JJ., concurred.