KOLE *v.* LAMPEN.

1. BILLS AND NOTES—FORGED INSTRUMENT—ESTOPPEL.

Where plaintiff got defendants' note in June in a horse deal and informed them that he held it, but no claim was made that the paper was forged, and later, in garnishment proceedings, brought by third parties against the owner of the horse, who had hired his team out to sprinkle the streets, the purchaser testified that the money for its hire belonged to the indorser on the note, his father, and the latter had signed the note, he also being present and making no objection to this statement, the indorser was estopped to deny the signatures after the one who committed the fraud had left the State, and the horse had died, so that plaintiff could not place himself in the same position as before.

2. SAME—TRIAL—INSTRUCTIONS.

The court's charge to the jury that defendant should have advised plaintiff at the first opportunity that the note was a forgery, and a neglect during about three months to notify the holder of its invalidity was unreasonable, and if the latter thereby suffered prejudice he was entitled to recover, was not erroneous, and properly instructed the jury as to what would be a reasonable time.

Error to Ottawa; Cross, J. Submitted January 12, 1916. (Docket No. 102.) Decided March 31, 1916.

Assumpsit in justice's court by James Kole against Fred Lampen and another on a promissory note. From a judgment for plaintiff defendants appealed to the circuit court. Judgment for plaintiff. Defendants bring error. Affirmed.

*Smedley & Linsey,* for appellants.

*Jarrett N. Clark,* for appellee.

KUHN, J. The plaintiff, who resides in the city of Holland, is engaged in the vehicle and implement business, and occasionally deals in horses. On May 9, 1914, Fred E. Lampen, Jr., who is the son of Fred Lampen, Sr., and a brother of the defendant George Lampen, called at the office of the plaintiff, and after some negotiation bought a horse, giving to the plaintiff a title note for the purchase price in the sum of $157.50, due on or before June 19, 1914. He also gave plaintiff a note payable to himself for the sum of $155, and purporting to be signed by the defendants, as collateral security. Fred E. Lampen, Jr., did not pay this note when it fell due, and suit was brought in justice's court by the plaintiff upon the note given him as collateral security. Judgment was rendered against the defendants in that court, and an appeal was taken to the circuit court. There the jury found, in answer to a special question, that the note was a forgery, but found for the plaintiff on the theory (which was submitted to them by the trial court) that the defendants were estopped by their conduct to deny liability and the genuineness of their signatures.

The cause being brought to this court by writ of error, counsel for the appellants allege as error relied upon by them that:

(1) The evidence was not sufficient to create an estoppel against either defendant, and therefore the court erred in submitting this question to the jury.

(2) If the evidence was sufficient to warrant the court in submitting the question of estoppel to the jury, it was not submitted under proper instructions.

It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be

prejudiced if the former is permitted to deny the existence of such facts. 16 Cyc. pp. 722, 723. See, also, Bigelow on Estoppel (5th Ed.), p. 570; *Dann* v. *Cudney,* 13 Mich. 239 (87 Am. Dec. 755) ; 11 Am. & Eng. Enc. Law (2d Ed.), pp. 427, 428; 16 Cyc. pp. 759, 769.

It is claimed by the defendant Fred Lampen, Sr., that he first learned that the plaintiff had a note in his possession indorsed by him through a letter written by the plaintiff on June 4, 1914, to the defendant George Lampen, to which was attached a postscript directed to him, and he thereupon asked his son Fred about it, who informed him that it was none of his business; that he (Fred, Jr.) would fix up the note. It is the contention of the defendants' counsel that this record does not show that there was any opportunity to speak, that there was a duty to speak, or that there was failure to speak by the defendants, or reliance in good faith upon such failure by the plaintiff as is required by law.

To determine whether this claim is justified, it is necessary to go somewhat more fully into the facts, and, among other things, we find that soon after his father had a talk with Fred, Jr., about the note, the latter had secured a contract from the city of Zeeland to sprinkle the streets, and used the horse purchased from the plaintiff on the wagon employed for that purpose, and gave his father an assignment of his wages from the city. This, he claimed, was to protect his father from signing his bond, and to secure him on notes signed by the father amounting to from $1,000 to $1,200.

Fred, Jr., was thereafter sued in the justice's court, and his wages were garnished, and on July 21, 1914, in the justice's court, Fred, Jr., testified in the presence and hearing of his father and George that the money garnished belonged to the father, that his father was on $1,000 worth of notes, to which the father replied,

"At least that," that he got the horse in question from Mr. Kole, and, when asked who helped him get the horse, replied, "Then I told them father was indorser on the notes." The horse died some time in the latter part of August. On August 10, 1914, another letter was sent by Mr. Kole to George Lampen, calling his attention to the collateral note concerning which he had been notified on June 4th by letter, and to the fact that it was now two months past due. On July 29th and on August 8th George Lampen was called on by Mr. Van Gelderen, who is employed by the plaintiff, and payment of the note was demanded. The first time George said he could not do anything until he saw Fred, and on the next occasion he said that he had arranged matters with Fred, and if Fred were seen he would pay it. On the 12th of September he and Mr. Kole saw Mr. Lampen, Sr., at his home, and again talked with him about the note, and were told that it would be fixed up the following week. But when the father and George came to see Mr. Kole according to their agreement, they for the first time denied their signatures. At about the same time Fred Jr., talked with his father and brother about going away, and said that he was told that if he would leave for six months the notes would fall due and drop out and nothing would be done to him. He did in fact leave the State and go West before the father and brother denied their signatures to the note. This was the first notice that the plaintiff had of the claim that their signatures were forgeries.

It thus appears that the horse sold by Mr. Kole in reliance upon the validity of the collateral note was worked on a contract the revenues of which went to defendant Fred Lampen, Sr., by direct assignment. When creditors attempted to garnish this money, both defendants in court, without remonstrance or denial, allowed Fred, in their presence and hearing, to testify

under oath that this money belonged to the father, and that the father had signed the note.

When Mr. Van Gelderen, representing Mr. Kole, called on the defendant George, and later when he and Mr. Kole called on the father, what reason or good excuse can be offered by them for not then and there denying their signatures to the note, notice of the existence of which they had previously had by letters written them by the plaintiff? If Mr. Kole had been notified by George, he might have taken steps to retake the horse under his title note, which Mr. Kole said he did not do because he depended upon the note given him as collateral security. At least, he might have taken some steps to protect his rights before Fred left the State.

It thus clearly appears that the plaintiff was worse off when he was told by the defendants that their signatures were forgeries than he was at the time the promise to pay was made. By their silence they allowed Fred, Jr., to carry out his fraud, and, having remained silent when they should have spoken, they should not now be allowed to complain; for as a result of their silence they prejudiced the plaintiff in his rights. We are of the opinion that under these facts it was no error to submit the question of estoppel to the jury.

It will be unnecessary to discuss at length the errors relied upon with reference to the charge of the court in submitting the question of estoppel, because, on an examination of the entire charge, we are satisfied that the case was properly submitted to the jury. The court did in part charge the jury as follows:

"I charge you, gentlemen of the jury, that as soon as either of these defendants learned that the plaintiff had a note against them, or he claimed to have a note against them for $155, then it was their duty at their first opportunity to inform Kole, the plaintiff, that such note was a forgery, if in fact it was a forgery, and, as they received such notice in June

and did not notify Kole that it was a forgery until some time in September following, that would be an unreasonable delay if done without reasonable excuse, and if, by reason of the conduct on the part of these defendants, this plaintiff has suffered in damages, he is entitled to recover against these defendants the full amount of that note, and, if you so find, your verdict should be for the plaintiff for the full face of the said note, and interest thereon."

It is argued that this section of the charge placed the legal duty upon the defendants to inform the plaintiff, immediately upon receipt of the letter in June, that this note was a forgery. But we do not so construe the instruction, as the court specifically said that if the defendants had notice of such forgery in June, and did not notify Kole that it was a forgery until some time in September following, that that would be an unreasonable delay if done without reasonable excuse, and if, by reason of the conduct on the part of these defendants, the plaintiff had suffered damages, he was then entitled to recover. As we have indicated in this opinion, the jury was justified in finding that there were opportunities when the defendants were in a position to get notice to the plaintiff of the infirmity in the note, which they did not do. And we think that, under the circumstances of this case, there was no error in the court submitting the question as he did.

In our opinion the verdict of the jury was fully justified under the evidence introduced on the trial.

Finding no prejudicial error in the record, the judgment is affirmed.

STONE, C. J., and BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.