MONROE STATE SAVINGS BANK *v*. ORLOFF.

1. Husband and Wife—Obligation of Married Woman Binding
   Only Where it Has Reference to Her Separate Estate.
   Under the statute (3 Comp. Laws 1915, § 11485) giving a
   married woman power to bind her separate estate by con-
   tract, her promissory note is valid if given for property
   already purchased by her or to be acquired by the con-
   tract, but she may not bind her separate estate by any
   obligation in the nature of suretyship, or by a promise
   to pay the debt of another.[1]

2. Same—Evidence—Sufficiency—Question For Jury.
   In an action on a promissory note against a married
   woman, evidence that defendant purchased a note given
   by a corporation in which she was a stockholder, by ex-
   ecuting the note sued on, was sufficient to justify the sub-
   mission of defendant's liability to the jury.[2]

3. Same—Burden of Proof.
   A plaintiff seeking to hold a married woman on an ob-
   ligation signed by her has the burden of proof that a
   consideration passed to her, or that her promise to pay
   had reference to her separate estate.[3]

4. Appeal and Error—Instruction as to Burden of Proof Not
   Reversible Where Issue Clearly Stated.
   Where the issue was as to whether a promissory note
   executed by defendant married woman was in payment
   of a note purchased by her, as claimed by plaintiff, or
   as security for the debt of another, as claimed by defend-
   ant, an instruction that the burden of proving plaintiff's
   claim was on plaintiff, and the burden of proving the other
   was on defendant, although unfortunate as relating to the
   burden of proof on defendant, *held*, not reversible error,
   in view of the fact that the issue was several times
   clearly stated to the jury, who were also instructed that
   unless they found that defendant had purchased the note
   the verdict must be in her favor.[4]

   Bird, Moore, and Wiest, JJ., dissenting.

---

[1]Husband and Wife, 30 C. J. §§ 585, 589, 612; [2]Id., 30 C. J. §
800; [3]Id., 30 C. J. §§ 562, 779; [4]Appeal and Error, 4 C. J. § 3014;
Husband and Wife, 30 C. J. § 801; Trial, 38 Cyc. p. 1786.
   Obligation purporting to be that of married woman as principal,
which, to knowledge of payee or obligee, is used to discharge
debt of third person, as a contract of suretyship, see note in 18
L. R. A. (N. S.) 81.

Error to Wayne; Hart (Ray), J., presiding.   Submitted April 24, 1925.   (Docket No. 128.)   Decided October 27, 1925.

Assumpsit by the Monroe State Savings Bank against Julia Stott Orloff on a promissory note.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Robert M. Brownson,* for appellant.

*Edgar G. Gordon,* for appellee.

Sharpe, J.   On June 11, 1920, plaintiff began suit by attachment in the Monroe circuit court to enforce collection of a note held by it, then past due, executed by the Detroit Transportation Truck Company, payment of which had been guaranteed by L. B. Orloff, the husband of defendant.   The sheriff, acting under the writ, seized a considerable amount of the property of the transportation company and took possession of its plant.   The defendant was a stockholder in the company.   At one time she had been a director. She was the owner of a very considerable amount of property.   Her husband was also interested financially in the company.

At the suggestion of defendant, a conference was held in the office of Thomas Payne, her personal attorney, on December 9, 1920, for the purpose of attempting to adjust plaintiff's claim against the transportation company and thus secure the release of the attachment.   Mr. and Mrs. Orloff, Mr. Payne, and representatives of the plaintiff were present.   It resulted in an arrangement by which the defendant executed and caused to be delivered to the plaintiff her personal note, due in 60 days, for the amount due the plaintiff from the transportation company.   The transportation company note was afterwards sent

to her, but stamped "Paid." The attachment was released. The note signed by defendant was renewed by her on February 7, March 9, and May 8, 1921, the interest due at the time of each renewal having been paid by her. Later, in 1921, the transportation company went into bankruptcy. On December 28th, the defendant filed a claim against the bankrupt for the amount of her outstanding note held by plaintiff and interest thereon. In the proof attached thereto, verified by her, she stated that the bankrupt was "justly and truly indebted" to her in the amount of the note referred to in the claim filed "for money advanced by claimant for the bankrupt;" that there were no set-offs or counterclaims and "that said account became due and payable on the 8th day of August, A. D. 1921." (This was the date on which the last renewal note became due.) The allowance of this claim was resisted by the trustee in bankruptcy for the reasons, among others, that defendant "is not a creditor of said bankrupt," and "because said bankrupt is not indebted to said claimant in any amount." On November 13, 1923, the referee in bankruptcy made an order, which, after reciting that claims had been filed by the Leonard B. Orloff Company in the sum of $25,281.04, and Leonard B. Orloff personally in the sum of $916.63, and Julia Stott Orloff (the defendant) in the sum of $2,166.02, and that objections had been filed to the allowance thereof, and that these parties had agreed to a reduction of the total amount of such claims to the sum of $7,500, allowed the three claims, without any separation as to amounts, in the said sum of $7,500. On December 1, 1923, the trustee in bankruptcy issued a check, payable to the order of "Leonard B. Orloff and Julia S. Orloff," in the sum of $423.53. This was indorsed by the payees and paid by the bank on which it was drawn on December 13th.

On January 9, 1922, after defendant's claim in bankruptcy was filed, but before its allowance, plaintiff began this action against defendant to recover on the renewal note executed by her on May 8, 1921. Defendant gave notice that she would prove in defense that the note was executed by her without consideration and that, at the time she executed it, she was a married woman and her promise to pay it in no way related to her separate estate.

The testimony as to what occurred at the conference in Mr. Payne's office was very conflicting. Some of the witnesses testified that the representatives of the plaintiff then present insisted that defendant must either pay the transportation note or purchase it from the bank, and that she did so purchase it, and her individual note was accepted by the bank as a consideration for its transfer of the transportation note to her. Other witnesses denied that there was any talk of purchase, and testified that the bank agreed to release the attachment if defendant would give her individual note for the amount due by the company, and that she executed it upon that understanding. At the conclusion of the proofs, defendant's counsel moved for a directed verdict—

"on the ground that the note sued upon is void by reason of the fact it was executed by a married woman and has no reference to nor does it deal with such married woman's separate individual estate."

The trial court denied the motion. The jury found for the plaintiff. Defendant here reviews the judgment entered on the verdict by writ of error.

1. The power of a married woman to bind her separate estate by contract is well settled in this State. Under the statute (3 Comp. Laws 1915, § 11485) her individual property—

"may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her, in the same

manner and with the like effect as if she were unmarried."

Her promissory note, given for property purchased by her, is valid. *Gillam* v. *Boynton,* 36 Mich. 236. Her promise to pay, as evidenced by such a note, must be based on a property consideration and relate to property already possessed by her, or to be acquired by the contract. *Johnson* v. *Sutherland,* 39 Mich. 579; *Russel* v. *Savings Bank,* 39 Mich. 671 (33 Am. Rep. 444). She may not bind her separate estate by any obligation in the nature of suretyship, or by a promise to pay the debt of another. *Caldwell* v. *Jones,* 115 Mich. 129; *Fitzgerald* v. *Garson Productions,* 221 Mich. 88; *Jarzembinski* v. *Plodowski,* 225 Mich. 104; *Kirby* v. *Orloff,* 226 Mich. 413.

That defendant might have lawfully purchased from plaintiff the note held by it against the transportation company cannot be questioned. She has the power under the statute to loan her money on notes. She may therefore purchase a note held by another. And the law will not constitute itself a guardian for her to see to it that such an investment is prudently made. The trial court, after stating the claims of the parties as to what was said at the conference in Mr. Payne's office, said to the jury:

"Now get the distinction of the claims in this case. The plaintiff claims that the defendant purchased the note. The defendant denies it, and that is the issue that is for your decision."

Defendant's counsel, after quoting a considerable part of the testimony of the witnesses present at the conference in Mr. Payne's office, insists that:

"If we look through the form and consider the substance of this transaction, the conclusion is irresistible that the defendant assumed and agreed to pay the debt of the Detroit Transportation Truck Company, a corporation. It was not a contract made by this

married woman in relation to her separate estate or for the benefit of her separate estate."

Eugene C. Betz, one of plaintiff's directors, testified that defendant said "the only way she could protect her interests was to make an arrangement whereby she might assume this obligation;" that Mr. Gutman, plaintiff's assistant cashier,—

"immediately brought objection, or suggested that such a plan wouldn't be feasible. The bank couldn't entertain it, for the reason that a woman's note, under those conditions, wouldn't be valid. Mr. Payne then said that Mr. Gutman was quite right in his understanding, but Mrs. Orloff could purchase the note,"

and that defendant said "under those conditions she would purchase that note." Mr. Gutman testified to the same effect. Plaintiff's representatives were unwilling to close the deal until they had submitted defendant's proposition to their board of directors. The board approved the settlement, and the note was afterwards given.

It seems a little incredible that the officials of the bank, if advised that defendant could not legally bind herself to pay the debt of the transportation company, would surrender its right to enforce collection in the attachment proceeding without securing an obligation on the part of defendant which would be enforceable. That could be accomplished only by her purchase of the note of the company.

The defendant was a competent business woman. If the testimony of these witnesses be true, she fully understood that she could not bind her separate estate by a promise to pay the debt of the transportation company; that the only settlement that could be made which would result in the release of the attachment, by means of which payment of plaintiff's claim was fully secured, was for her to purchase the note, nonpayment of which had caused its issue. Had she

paid the cash and the note been turned over to her, the legality of the transaction could not be questioned. Betz also testified that defendant said that when the note became due "she would have the cash and take it up."

A consideration of the entire record satisfies us that there was ample proof to justify the submission of defendant's liability to the jury.

2. The rule is well established in this State that when it is sought to hold a female on an obligation signed by her, and it appears that she is a married woman, the burden is on the plaintiff to show that a consideration passed to her; in other words, that her promise to pay had reference to her separate property. *Judd* v. *Judd*, 187 Mich. 612, in which the earlier cases are reviewed and discussed.

Defendant insists that, under this rule, there was reversible error in the following paragraph from the charge of the court:

"The burden of proving the liability of the defendant in this case is upon the plaintiff. The defendant claims that the note was given to secure the debt of the transportation company, or the note given by the transportation company to the bank, and she claims that in that way it did not relate to her sole and individual property. Now the burden of proving the admission of the note and the plaintiff's claim is upon the plaintiff, and the burden of proving the other is upon the defendant, and that is established by what is known as a preponderance of evidence; that is, evidence that has more convincing force to your mind than evidence opposed to it."

Standing alone, there would be force in this contention. The issue, as before stated, was very clearly stated to the jury. Did the defendant purchase the transportation company note as claimed by plaintiff? or, Did she execute and deliver her note as security for the payment of the transportation company note?

An answer to the first question in the affirmative is in itself an answer to the second in the negative. Plaintiff assumed the burden of proving that the promise of the plaintiff had reference to her separate estate by evidence that the consideration for her note was the transfer to her of the transportation note. If this fact was not established by a preponderance of the evidence, plaintiff could not recover. If it was, it in itself established that her note was not given as a security.

Following the instruction above quoted, the court said:

"Now, gentlemen, under the law in this State a married woman's contract must relate to her sole individual property. The defendant in this case would have a right to purchase the property of another. She would have a right to purchase an obligation and notes and bonds by buying them outright with her own property and by them becoming her own property; and if you find in this case that this contract made, or the contract that was made, the agreement that was made and was consummated soon after, was the contract or the agreement, and it was carried out, and that the defendant purchased the note in question, or the renewals of that note previously given, that she purchased the Detroit Transportation Truck Company note, and that that note was transferred and became the individual property of the defendant in this case, then your verdict should be for the plaintiff. But unless you do so find, your verdict should be for the defendant."

What was said relative to the burden of proof resting on defendant was unfortunate, but, in view of the clearness with which the issue was several times stated and the positive instruction that unless the jury found that the defendant purchased the transportation note and it thereby became her individual property, their verdict must be in her favor, we are unable to say affirmatively that the error so committed affected the verdict of the jury.

The judgment is affirmed.

McDONALD, C. J., and CLARK, STEERE, and FELLOWS, JJ., concurred with SHARPE, J.

BIRD, J. (*dissenting*).    I am unable to concur in the views of Mr. Justice SHARPE, in this case that defendant is liable on her note.    By the common law a married woman has no power to contract.    By statute she is permitted to do so with reference to her separate estate.    3 Comp. Laws 1915, § 11485.    In the construction which the court has given this statute for three-quarters of a century, it has jealously guarded the estates of married women.    Repeated attempts have been made to sail around the statute and the holdings of this court, but they have usually been in vain, as the court has insisted upon looking at the substance of the transaction instead of the form.    As to these attempts R. C. L. observes:

"If it appears that an elaboration of outward details was, as both parties knew, but a cloak to cover an attempt to conclude a contract of suretyship in violation of the statute, the indirection in method by which they have proceeded will not avail to save the transaction.    Whatever device may be resorted to for the purpose of evading the statute, if the person seeking to enforce the contract knew of, or participated in, the design, or purposely remained ignorant, courts will deal with the transaction according to its substance, regardless of the form in which it may have been disguised."    13 R. C. L. p. 1302.

With the previous attitude of this court in mind, let us examine this transaction.    Defendant was a married woman.    She was a stockholder in the Detroit Transportation Truck Company, an industrial corporation.    The company had given the plaintiff a promissory note for $2,000.    It did not pay the note when due.    Plaintiff attached a part of the company's assets and took charge of the plant.

This was in June.   Various suggestions were made for a settlement.   Finally, in December, defendant had a conference with plaintiff, and she suggested indorsing the note, and thereby releasing the assets of the company.   This suggestion was declined because defendant was a married woman and could not become a surety.   At a later conference it was suggested that she purchase the note.   This was agreed to and she purchased the company's note and gave her note to plaintiff in payment of the principal and interest.

It takes very little acumen to see that this form of handling the matter was adopted to avoid the statute and the holdings of this court.   Defendant did not want the note as an investment.   She evidently had no money to purchase it.   Except for the fact that she was a stockholder and wanted to assist the corporation she would not have purchased it.   Financially, this placed her in no different position than she would have been had she signed as a surety.   If she had indorsed the note as a surety and the company had defaulted, she would have been obligated (morally) to pay the note and had recourse to the assets of the company to reimburse her.   If she purchased the note and the company defaulted she would have had recourse to the same assets.   The suggestion that defendant purchase the note was clearly an ingenious subterfuge and device to enable her to avoid the statute and open the way for her to become a surety.   This court has considered at length the suretyship of married women for corporations in which they were interested.   *Russel* v. *Savings Bank*, 39 Mich. 671 (33 Am. Rep. 444); *Detroit Chamber of Commerce* v. *Goodman*, 110 Mich. 498 (35 L. R. A. 96); *Fitzgerald* v. *Garson Productions*, 221 Mich. 88; *Jarzembinski* v. *Plodowski*, 225 Mich. 104; *Kirby* v. *Orloff*, 226 Mich. 413.   In each of these cases the suretyship of a married woman, who was a stockholder in

the company, was declared invalid.    In the last-named case it was said by Justice McDONALD:

"In the present case the defendant's note was not given in relation to or for the benefit of her separate estate.    It was the undertaking of a married woman to pay the debt of another.    The fact that it was to pay the debt of a corporation in which she was the principal stockholder does not alter the character of her liability.    Her legal identity as a stockholder is distinct from that of the corporation.    The corporate property is not her separate estate.    When she contracted to pay the debts of the corporation she was not dealing with reference to her separate estate. Though she may have been indirectly benefited as a stockholder, she received no consideration affecting her individual estate.

" 'The statute does not intend to remove all the common-law disabilities resting upon married women.    The design was to confer upon a wife the right to enjoy and dispose of her own property, and to acquire property, and the statute should not be extended by construction to cases not embraced in its language nor within its design.'    *Detroit Chamber of Commerce* v. *Goodman,* 110 Mich. 498 (35 L. R. A. 96)."

If the evasion of the statute be successful in this case it will, in effect, repeal the statute.    In any given case where a married woman desires to become a surety she will not sign as such but will purchase the obligation of the person she desires to assist and give her own note in payment.    When it is established that this kind of transaction is legal the statute will have lost its force.    To say, as this court has hitherto said, that such a transaction is invalid, will deprive married women of no rights which they have hitherto enjoyed.    They may still make contracts and deal with reference to their separate property.    They may purchase securities in good faith when it is not done per force of a plan to make them surety for another. I think this court should keep on construing the statute as it has done for nearly three-quarters of a

century.    If any changes are to be made they should be made by the legislature.

The trial court made an error in charging upon the question of burden of proof.·   *Judd* v. *Judd,* 187 Mich. 612.    In view of what he had said to the jury, the error was not very important.    It was, however, erroneous.

The judgment should be reversed, with no new trial, with costs to defendant.

MOORE and WIEST, JJ., concurred with BIRD, J.