## DOWAGIAC NATIONAL BANK *v.* MAIER.

1. HUSBAND AND WIFE—MARRIED WOMAN'S AGREEMENT TO PAY HUSBAND'S DEBTS—FINDING OF COURT—RECORD.
   Finding of court that agreement whereby bank gave an extension of time on husband's indebtedness in consideration of married woman's agreement to pay it was given by her to secure the debt of her husband *held*, amply supported by record.

2. SAME—MARRIED WOMEN—CONTRACTS.
   Although such contracts as a married woman may lawfully make may be made with the 'like effect as if she were unmarried, she has no general capacity to contract and can only make such contracts as relate to her own property (3 Comp. Laws 1929, § 13057).

3. SAME—MARRIED WOMEN—SURETY OF HUSBAND.
   A married woman may purchase property and bind herself for the purchase money but she cannot become personally liable except on account of her own matters and cannot enter into an undertaking jointly with her husband merely as his surety.

4. SAME—MARRIED WOMEN—CONTRACTS—BURDEN OF PROOF.
   In action against a married woman, plaintiff has burden of proving that the contract is her own, within her powers, and that consideration passed to her.

5. SAME—MARRIED WOMAN'S CONTRACT TO PAY HUSBAND'S DEBT.
   Record in action against married woman *held*, to show promise sued on was one to pay husband's debt and not a contract relating to or benefiting her separate estate, hence, not a contract upon which she was liable (3 Comp. Laws 1929, § 13057).

---

* Continued from Vol. 284.

Appeal from Cass; Warner (Glenn E.), J. Submitted April 12, 1938. (Docket No. 68, Calendar No. 39,968.) Decided June 6, 1938.

Assumpsit by Dowagiac National Bank against Lydia W. Maier to recover sums allegedly due on loans. Judgment for defendant. Plaintiff appeals. Affirmed.

*Carl D. Mosier,* for plaintiff.

*Clarence M. Lyle,* for defendant.

CHANDLER, J. The defendant, about July 1, 1923, with her own money purchased and paid for the Dixie Hotel in Dowagiac, Michigan, including all of the furniture, fixtures and equipment, and she and her husband, L. J. Maier, whom she married on June 15, 1923, operated said hotel until his death on May 27, 1933.

Mr. Maier and his first wife had operated another hotel in Dowagiac prior to his marriage to defendant, during which time he borrowed money from the plaintiff and continued his borrowings down to and including January 28, 1928, at which time he was indebted to plaintiff in the sum of $2,800. At the time of his death he was indebted to the bank on two promissory notes, one dated March 2, 1933, in the sum of $1,000 and one dated March 5, 1933, in the sum of $1,300, each payable three months after date.

Plaintiff claims that Mr. Maier made two property statements, one being made July 20, 1927, which showed the item "furniture and fixtures used in business $1,000." Later, on July 3, 1932, he made another statement, listing "furniture and fixtures used in business $4,000."

The property statements were evidently made a long time subsequent to the making of the original loan. The record discloses that in the early part of 1932, Mr. Pugsley, cashier of plaintiff bank, had many conversations with the defendant relative to her husband's indebtedness to the bank. He testified,

"I remember having some conversation with Mrs. Maier about these notes as many as a dozen times, I guess. I told her that the department was criticizing them very strongly, due to the last (long) time that we had held them and we would have to start suit unless we had some collateral or security. She said that she didn't want that; that she didn't want any suit started. She said that she would not sign a note but that she would pay these notes. * * *

"*Q.* What, if anything, was said to Mrs. Maier by you or by Judge DesVoignes in your presence as to getting a judgment and levying on property of Mr. Maier?

"*A.* She didn't want that and would give us in writing what she did, which the judge drew as a further guarantee that eventually the note would be paid."

These discussions resulted in defendant giving to plaintiff exhibit "A" which is the instrument upon which this suit is based:

"March 16, 1932.

"Whereas The Dowagiac National Bank holds a note $2,300 signed by L. J. Maier for the same.

"Now in the event of my husband (said L. J. Maier) death preceding that of mine, then and in that event I hereby expressly agree in consideration of the extension of said indebtedness to pay said indebtedness and notes on the balance remaining due thereon together with interest and hold said bank harmless from any loss thereon, for I regard it as

an honest debt and hereby agree to see them made harmless from any loss thereon.

(Mrs. Louie J. Maier),

"Witnessed:        Mrs. Lydia Whitney Maier.

"C. F. Pugsley,

"L. B. DesVoignes."

The defendant's version of this transaction is as follows:

"I have had many words from the bank about his loan. I have talked with Judge DesVoignes who was then president of the bank, and I have also talked with Mr. Pugsley who is cashier, and it all had to do with the loan that the bank held against my husband; and I have also talked with Mr. Laing and Mr. Heddon who are on the board of directors. In these talks with Mr. Pugsley and Judge DesVoignes, well, they told me that these loans to my husband had been in the bank for quite some time and that the bank examiners were asking the bank to take those loans out, and the bank advised me that it might be necessary to commence suit against Louis on his note. * * *

"They called me several times and asked me to go to the bank. I had to go. They asked me to come. I would not refuse any of them to go to the bank. My several talks with Mr. Pugsley and Judge Des-Voignes resulted in their persuading me to sign this paper. I would say I was over-persuaded."

The evidence in the case clearly shows that no one other than defendant ever invested any money in the hotel or furnishings, and that Mr. Maier was amply compensated by defendant for all services rendered by him in the conduct of the hotel during his lifetime. The trial court, hearing the case without a jury, found that the instrument sued upon was given by the defendant for the debt of her husband, and that defendant was not liable thereon because

of the provisions of 3 Comp. Laws 1929, § 13057 (Stat. Ann. § 26.161), reading as follows:

"That the real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations and engagements of her husband and may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her in the same manner and with the like effect as if she were unmarried."

The finding of the trial court that exhibit "A" was given by defendant to secure the debt of her husband finds ample support in the record and his conclusions of law are supported by a long line of decisions of this court, only a few of which need be here referred to.

"Under our present system, whatever contracts a married woman may lawfully make, may be made 'with the like effect as if she were unmarried.' 2 Comp. Laws 1871, § 4803 (3 Comp. Laws 1929, § 13057). But she has now no general capacity to contract. She can only make such contracts as relate to her own property, while in regard to that she has very full powers. She may purchase property and bind herself for the purchase money. *Tillman* v. *Shackleton,* 15 Mich. 447 (93 Am. Dec. 198); *Campbell* v. *White,* 22 Mich. 178; *Rankin* v. *West,* 25 Mich. 195. But she cannot become personally liable except on account of her own matters; and cannot enter into an undertaking jointly with her husband merely as his surety. *De Vries* v. *Conklin,* 22 Mich. 255. And she can never be held without affirmative proof that the contract is her own and within her powers. *Powers* v. *Russell,* 26 Mich. 179; *Emery* v.

*Lord,* 26 Mich. 431.'' *West* v. *Laraway,* 28 Mich. 464.

See, also, *Kenton Insurance Co. of Kentucky* v. *McClellan,* 43 Mich. 564; *Wallace* v. *Detroit City Gas Co.,* 225 Mich. 109 (P. U. R. 1924B, 439); *Monroe State Savings Bank* v. *Orloff,* 232 Mich. 486. In the case last cited, the court said:

"The rule is well established in this State that when it is sought to hold a female on an obligation signed by her, and it appears that she is a married woman, the burden is on the plaintiff to show that a consideration passed to her; in other words, that her promise to pay had reference to her separate property. *Judd* v. *Judd,* 187 Mich. 612, in which the earlier cases are reviewed and discussed."

See *Fechheimer* v. *Peircc,* 70 Mich. 440; *Jarzembinski* v. *Plodowski,* 225 Mich. 104; *Kirby* v. *Orloff,* 226 Mich. 413.

Plaintiff on the trial in the court below and in its brief insists that the case of *Whelpley* v. *Stoughton* 112 Mich. 594, is controlling. In that case the question involved was as to whether a married woman's note is supported by sufficient consideration to make it binding upon her separate property where it is given for the surrender of, and to prevent the payee from attempting to collect, a note of the same amount against the husband by attacking the validity of the transfer by said husband to the wife of all his property, including a farm worth approximately $8,000, upon the claim that such transfer was voluntary and in fraud of his creditors. The record there showed that a deed had been given by the husband to the defendant wife at a time when the plaintiff held a promissory note against the husband and that the conveyance was voluntary so that the property thus conveyed could be subjected to the plaintiff's claim

in a court of equity. In passing upon the question, the court said:

"If, under these circumstances, and to relieve herself from an attack upon the property conveyed, she saw fit to promise to pay the husband's debt, to relieve what had become her separate property from liability, it was a contract in relation to her own property, and valid."

The cited case is in no way analogous to the present situation.

The record undisputedly shows that the written promise sued upon was a promise on the part of defendant to pay a debt of her husband and was not a contract relating to or benefiting her separate estate.

Judgment affirmed, with costs to defendant.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.