## NATIONAL BANK OF ROCHESTER v MEADOWBROOK HEIGHTS, INC.

1. Husband and Wife—Married Woman—Contracts—Separate Estate—Coverture.

   A plaintiff, in order to hold a married woman liable on a contract, must prove that the contract directly concerned the married woman's separate estate.

2. Husband and Wife—Married Woman—Suretyship—Coverture —Separate Estate—Contracts—Capacity to Contract—Equitable Estoppel.

   A married woman may not bind her estate by any obligation in the nature of a suretyship or by a promise to pay the debt of another; however, a married woman may be precluded from asserting her disability through operation of equitable estoppel.

3. Estoppel—Misrepresentation—Reliance—Knowledge of Facts.

   An estoppel arises when one by his acts, representations or admissions intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief so that he will be prejudiced if the former is permitted to deny the existence of such facts; one who is cognizant of all the material facts can claim nothing by estoppel.

4. Estoppel—Equitable Estoppel—Married Woman—Contract— Capacity to Contract—Married Women's Act—Statutes.

   A lender who, in dealing with a person presumptively lacking capacity to contract, ignores such facts may not rely upon equitable estoppel in order to defeat the protectionist policy of

References for Points in Headnotes

[1] 41 Am Jur 2d, Husband and Wife §§ 16–20, 105, 139 *et seq.*
[2] 41 Am Jur 2d, Husband and Wife §§ 39, 104, 214, 219.
[3, 4] 41 Am Jur 2d, Husband and Wife §§ 23–25, 270.
[3] 28 Am Jur 2d, Estoppel and Waiver § 40.
[5, 6] 4 Am Jur 2d, Appeal and Error §§ 116, 242, 243, 909.
[7] 4 Am Jur 2d, Appeal and Error §§ 89, 616.
   77 Am Jur 2d, Venue § 84.

the married women's act (MCLA 557.1 *et seq.;* MSA 26.161 *et seq.).*

5. JUDGMENT—CONSENT JUDGMENT—REVIEWABILITY—CONSENT OF PARTIES.

A consent judgment may not be set aside without the consent of the parties thereto, and therefore may not be reviewed on appeal.

6. JUDGMENT—CONSENT JUDGMENT—INTENT OF PARTIES—FACT QUESTION—COURT RULES.

The issue of whether one of the parties to a judgment intended the judgment to be a consent judgment is one of fact and should be raised in the trial court (GCR 1963, 528.3).

7. VENUE—IMPROPER VENUE—BASIS FOR REVERSAL—STATUTES.

Improper venue alone may not be the basis for disturbing a judgment (MCLA 600.1645; MSA 27A.1645).

Appeal from Oakland, Robert L. Templin, J. Submitted December 7, 1977, at Lansing. (Docket No. 31522.) Decided January 23, 1978.

Complaint by the National Bank of Rochester against Meadowbrook Heights, Inc. and Charles M. Wilkinson and Helen Z. Wilkinson, his wife, jointly and severally, to collect on two promissory notes. Summary judgment for plaintiff. Defendants Wilkinson appeal. Affirmed in part and reversed in part.

*Bebout, Potere, Cox, Hughes & Cadieux* (by *Mark W. Lyon),* for plaintiff.

*Chilimigras, Powers & Conlon, P. C.,* for defendants.

Before: R. B. BURNS, P. J., and ALLEN and R. M. MAHER, JJ.

R. B. BURNS, P. J. This is an action to collect on two promissory notes. The trial court denied de-

fendants' motions for change of venue, and granted plaintiff's motion for summary judgments against the maker of the notes, Meadowbrook Heights, Inc., against the guarantors of the notes, Mr. and Mrs. Wilkinson, jointly, and against Mr. Wilkinson, severally. Mrs. Wilkinson interposed a defense of coverture as to her several liability, but, following a trial on the merits, the trial court granted plaintiff's renewed motion for summary judgment against Mrs. Wilkinson, severally. Mr. and Mrs. Wilkinson appeal and we affirm as to venue and reverse as to Mrs. Wilkinson's several liability.

Meadowbrook Heights, Inc., is a close corporation owned and operated solely by Mr. Wilkinson, and was engaged in an attempt to build an apartment complex in Oakland County. To this end Meadowbrook obtained a $30,000 loan from plaintiff, in exchange for which it gave a promissory note signed by its president, Mr. Wilkinson. When the note came due, Mr. Wilkinson sought an extension plus an additional loan of $20,000. Plaintiff determined that neither Meadowbrook nor Mr. Wilkinson individually qualified for an extension or additional credit. Plaintiff, aware that Mrs. Wilkinson had assets separate from those of her husband, and acting upon Mr. Wilkinson's representation that his wife's sole and separate estate would benefit from the extension and additional loan, informed Mr. Wilkinson that it would allow the extension and the additional loan if Mrs. Wilkinson guaranteed both. Plaintiff prepared for the signatures of Mr. and Mrs. Wilkinson the following "letter of consideration":

"We wish to take this opportunity to advise you that we are both very concerned about the success of Meadowbrook Heights, Inc., as we have invested heavily in

this corporation the same will have a noted effect on our joint and several estates.

"We therefore are requesting that every consideration be given in the extension *[sic]* of credit and loans. To assure a proper line of credit and financial resources to the corporation in protection of our individual holdings we will be most happy to personally guarantee all required notes. We do so in consideration of your making the necessary funds available to Meadowbrook Heights, Inc."

In his testimony, Mr. Wilkinson denied telling plaintiff that his wife's sole and separate estate would benefit from the loan. Instead, plaintiff informed him that he and his wife had to sign the letter and guarantees or he would not get the loans. He did not understand the legal significance of the letter. Mrs. Wilkinson testified that, except for their house, she had always kept her property separate from that of her husband and had never commingled their separate assets. She did not expect to derive any benefit from the loans to the corporation. At the time her husband brought the "letter of consideration" to her, she was ill, and did not read it, although she did sign it. She routinely signed documents presented by her husband without reading them.

At the close of proofs, Mrs. Wilkinson moved to dismiss, and plaintiff renewed its motion for summary judgment. In an opinion delivered from the bench, the trial court ruled that Mr. and Mrs. Wilkinson's assertions that they did not understand the significance of the letter which they were signing were not credible. Although plaintiff was "slipshod" in not pinning down Mrs. Wilkinson as to how the loans would benefit her separate estate, it did rely upon the letter to its detriment, so that it would be inequitable to permit Mrs. Wilkinson to deny that her sole and separate

estate would be benefited. The court therefore granted summary judgment against Mrs. Wilkinson, severally.

In reaching its decision, the trial court resolved several factual disputes. Its decision, incorrectly labeled summary judgment, GCR 1963, 117.2(3), was actually a decision on the merits following trial. We therefore review to determine whether the trial court's findings of fact are clearly erroneous, giving regard to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. GCR 1963, 517.1. The record indicates that both Mr. and Mrs. Wilkinson are experienced businesspersons, and had made a practice of keeping Mrs. Wilkinson's assets separate from those of Mr. Wilkinson. From this, coupled with his determination that Mr. and Mrs. Wilkinson were not credible, the trial court reasonably concluded that they were aware of the significance of the "letter of consideration". There was testimony that plaintiff relied upon the letter in extending credit, even though it knew that the proceeds of the loan would go to the corporation, and that Mrs. Wilkinson was not a shareholder of the corporation. We find no clear error in the trial court's findings of fact. We therefore disregard defendants' contention on appeal that Mrs. Wilkinson was the innocent victim of overreaching by her husband and plaintiff, and assume for purposes of analysis that all parties were aware of the law of coverture, and that the suretyship was the result of reasoned consideration of each party's best interest.

The primary issue on appeal is whether equitable estoppel precludes Mrs. Wilkinson from asserting as a defense to her liability as a surety the disability of coverture.

The married women's act of 1855 was passed to protect married women from the improvidence or predations of their husbands and from the husbands' creditors. *Artman v Ferguson,* 73 Mich 146, 150; 40 NW 907, 909 (1888), *Tong v Marvin,* 15 Mich 60, 71 (1866), Note, *The Impact of Michigan's Common-Law Disabilities of Coverture on Married Women's Access to Credit,* 74 Mich L Rev 76 (1975). The act, MCLA 557.1 *et seq.;* MSA 26.161 *et seq.,* provides that married women may acquire, hold, and devise property separate from their husbands' influence and not subject to their husbands' debts, with "like effect as if * * * [they] were unmarried", MCLA 557.1; MSA 26.161, and may be held liable on any contract made in relation to their sole property, MCLA 557.4; MSA 26.163. The act did not confer upon married women a general power to contract. *West v Laraway,* 28 Mich 464, 465 (1874). In order to hold a married woman liable on a contract, a plaintiff must prove that the contract directly concerned the married woman's separate estate.[1] See, *e.g., Koengeter v Holzbaugh,* 332 Mich 280, 283; 50 NW2d 778, 779 (1952), *Judd v Judd,* 187 Mich 612, 615; 154 NW 31, 32 (1915), *Kenton Insurance Co of Kentucky v McClellan,* 43 Mich 564, 565; 6 NW 88 (1880). In *Koengeter v Holzbaugh, supra,* a married woman was held not severally liable on a note she made with her husband, where the makers told the holders of the note that the loan was to provide working capital for a corporation of which the wife was the sole stockholder. The Court held that the contract was for the benefit of the corporation and, absent fraud

---

[1] An additional statutory abrogation of the common law permits a married woman to become jointly liable on a contract with her husband, MCLA 557.51–557.52; MSA 26.181–26.182, but limits liability to property owned jointly with him. MCLA 557.53; MSA 26.183. Except as to venue, Mrs. Wilkinson did not contest her joint liability as a surety.

or misuse of the corporate device, the contract was not for the benefit of the woman's separate estate. In *Monroe State Savings Bank v Orloff,* 232 Mich 486, 490; 205 NW 596, 597 (1925), the Court stated that a married woman "may not bind her estate by any obligation in the nature of suretyship, or by a promise to pay the debt of another". Accord, *West v Laraway, supra.* Such a contract does not concern her separate estate.

In the instant case it was undisputed that Mrs. Wilkinson signed as a surety, and that the loan went to a corporation owned by her husband, for the purpose of attempting to build an apartment complex. Mrs. Wilkinson lacked capacity to make this contract, and the contract is therefore void. *Judd v Judd, supra.*

A married woman may be precluded from asserting her disability through operation of equitable estoppel. See *National Lumberman's Bank v Miller,* 131 Mich 564, 567; 91 NW 1024, 1025 (1902), *overruled on other grounds, Judd v Judd, supra, Detroit Newspaper Industrial Credit Union v McDonald,* 9 Mich App 146; 156 NW2d 62 (1967).

"It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, * * * intentionally or through culpable negligence[2] induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." *Kole v Lampen,* 191 Mich 156, 157–158; 157 NW 392, 393 (1916).

"One who is cognizant of all the material facts can claim nothing by estoppel." *Cudahy Brothers Co v West*

---

[2] Had Mrs. Wilkinson's testimony that she signed the "letter of consideration" without reading it been accepted by the trial court as true, the misrepresentation would have been a result of culpable negligence, so that, had all other elements of equitable estoppel been shown, the doctrine would apply. *See Collateral Liquidation, Inc v Manning,* 287 Mich 568, 572; 283 NW 691, 692–693 (1939).

*Michigan Dock & Market Corp,* 285 Mich 18, 26; 280 NW 93, 96 (1938).

Plaintiff's reliance upon Mrs. Wilkinson's "letter of consideration" cannot be said to be rightful, in light of its knowledge that she was acting as a surety, and that the loan was going to Meadowbrook, in which she was not even a stockholder. Plaintiff must be charged with knowledge of facts from which it could have deduced Mrs. Wilkinson lacked capacity to make the contract. In dealing with a person presumptively lacking capacity to contract, see *Judd v Judd, supra,* a lender who ignores such facts may not rely upon equitable estoppel in order to defeat the protectionist policy of the married women's act. Since Mrs. Wilkinson is not estopped from denying her incapacity to contract, plaintiff may not recover against her separate estate.

The second issue on appeal is whether we may review the trial court's grant of summary judgment against Mr. and Mrs. Wilkinson, jointly. This judgment is labeled as a consent judgment in the lower court record. As a general rule a consent judgment may not be set aside without the consent of the parties thereto, and therefore may not be reviewed on appeal. *Sauer v Rhoades,* 338 Mich 679, 681; 62 NW2d 634, 635 (1954), *In re Estate of Meredith,* 275 Mich 278, 289; 266 NW 351, 354; 104 ALR 348, 352 (1936). The issue of whether defendants intended the judgment to be a consent judgment is one of fact, and should have been raised in the trial court. GCR 1963, 528.3. "This Court is limited on review to the issues decided by the trial court." *Hernandez v Consumers Power Co,* 51 Mich App 288, 291; 214 NW2d 846, 848 (1974). We therefore accept the record as it stands,

and decline to review this grant of summary judgment.

The third issue on appeal is whether the trial court erred by not granting defendants' motions for change of venue. This issue is moot as to Mrs. Wilkinson's several liability because of our disposition of the first issue, and we do not reach the issue as to Mr. and Mrs. Wilkinson's joint liability because of our resolution of the second issue. The motions were based upon a factual dispute as to whether Meadowbrook was doing business in Oakland County. If it was, then venue was proper as to all defendants. MCLA 600.1621; MSA 27A.1621,[3] MCLA 600.1625(b)(iv); MSA 27A.1625(b)(iv),[4] MCLA 600.1641; MSA 27A.1641. Mr. Wilkinson made no record on this issue; hence, we have nothing to review.[5] Improper venue alone may not be the basis for disturbing a judgment. MCLA 600.1645; MSA 27A.1645. We therefore detect no prejudice which would require remand for supplementation of the record.

Affirmed in part; reversed in part. No costs, neither side prevailing in full.

---

[3] This statute was amended after this suit was begun. 1976 PA 375.

[4] This statute was repealed after this suit was begun. 1976 PA 375.

[5] Although the trial transcript reveals Meadowbrook was doing business in Oakland County, Mr. Wilkinson and Meadowbrook were not parties to that trial and therefore are not bound by it.