.114   631
143   455

## MARX *v.* BELLEL.[1]

MARRIED WOMEN—PROMISSORY NOTE—CONSIDERATION.

Defendant, who wished to obtain a loan for carrying on her husband's business, made a promissory note for the amount required, due in one year, and secured the same by a chattel mortgage upon her separate property. Upon its appearing that the payee, plaintiff's agent, would be unable to discount the one-year note, defendant's husband gave his three-months note, and the money was obtained on this note upon plaintiff's indorsement. Defendant's note and mortgage were delivered to plaintiff as security. Thereafter defendant gave her note in renewal of the one on which the loan had been secured, and the security in plaintiff's hands was canceled. *Held*, that defendant, by mortgaging her separate property to secure the indebtedness, became liable for the debt, and was therefore liable on the renewal note.

Error to Wayne; Frazer, J. Submitted October 7, 1897. Decided October 25, 1897.

*Assumpsit* by Maria Marx against Elizabeth Bellel upon a promissory note. From a judgment for plaintiff, defendant brings error. Affirmed.

*Flowers, May & Moloney,* for appellant.

*W. E. Baubie,* for appellee.

MOORE, J. Plaintiff recovered a judgment against defendant, from which defendant appeals.

Prior to June, 1895, Frank Bellel had been engaged in keeping a saloon and restaurant, and had business relations with the Wyandotte Brewing Company, through Frank Marx, who was one of its stockholders, and is the son of the plaintiff. It is the claim of the plaintiff that in June Mr. Bellel was sick, and it was evident he could not go on with the business, and that he soon afterwards died;

---

[1] Rehearing denied December 21, 1897.

that his wife desired to go on with the business, with the assistance of her son. It is also claimed that Mrs. Bellel desired Frank Marx to find $500 for her, with which to pay the tax upon the business, and agreed that, if he would do so, she would secure him by giving a mortgage upon her piano; that Frank Marx learned he could get the money with the assistance of his mother, and so informed Mrs. Bellel; that, on the 27th of June, Mrs. Bellel made her note for $417, payable July 1, 1896, to Frank Marx, and secured the same by executing to him a chattel mortgage for a like amount upon her piano; that, by direction of Mrs. Bellel, Mr. Bellel brought the note and mortgage to Mr. Marx, at Wyandotte, where it was expected the money would be procured at the bank. When application was made at the bank for the money, it declined to furnish it, on the ground that the note ran too long. It is claimed that an arrangement was then made by which a note of $400, due in three months, was given by Frank Bellel to Mrs. Marx, the plaintiff, which was indorsed by her. This note was discounted at the bank, the money delivered to Mr. Bellel, the plaintiff claims, for his wife, and the note and chattel mortgage signed by Mrs. Bellel were delivered to secure Mrs. Marx for her indorsement. The chattel mortgage was duly filed. It is also claimed that Mrs. Bellel told Mr. Marx that she received the money all right, and approved of the transaction. The note, signed by Frank Bellel and indorsed by Mrs. Marx, was not paid at maturity, but a like note was given in renewal thereof. A renewal note was also given October 2, 1895, due in two months. This note was not paid, and it is claimed by the plaintiff that an arrangement was then made with the defendant by which she gave her note, dated December 5, 1895, to Mrs. Marx, for $400, due in two months; and the note of Frank Bellel was thereupon canceled, and the note of Mrs. Bellel and the chattel mortgage upon Mrs. Bellel's piano, dated June 27, 1895, were canceled, and the lien upon the piano was released.

This action is brought upon the note of December 5, 1895. It is the claim of defendant that the note was not given for her benefit; that she did not conduct the business; that the piano belonged to her husband and herself; that, when the note sued upon was given, she was a married woman; that the note was not given in relation to her estate, but was given to take the place of a note given by her husband, and was void. The testimony was very conflicting. The trial judge submitted the question to the jury, who found in favor of the plaintiff. A great many assignments of error are made, but those necessary to be discussed relate to the charge of the court.

The circuit judge, in a very full charge to the jury in relation to the liability of a married woman, made use of this language:

"In other words, if she has property of her own, she may mortgage it for the purpose of securing money for her husband's benefit, because, under the law, a debt of that kind would be the debt of herself in relation to her sole property; therefore she might, by mortgaging her own property, become liable for the debt of her husband."

Defendant claims this is error, and cites *Schmidt* v. *Spencer*, 87 Mich. 121; *Emery* v. *Lord*, 26 Mich. 431, 434; *West* v. *Laraway*, 28 Mich. 464; *Ross* v. *Walker*, 31 Mich. 120, 125, 126; *Kitchell* v. *Mudgett*, 37 Mich. 84; *Jenne* v. *Marble*, Id. 321, 322; *Johnson* v. *Sutherland*, 39 Mich. 579, 581. An inspection of these cases will show that they do not support the construction claimed by counsel. They relate to the personal liability of the wife for the debt of her husband, and not to her ability to create a lien upon her estate for his debt. For more than 30 years it has been the law in this State that "there is no legal objection to the making by a wife of a mortgage to secure her husband's debts." *Watson* v. *Thurber*, 11 Mich. 457; *Burdeno* v. *Amperse*, 14 Mich. 97 (90 Am. Dec. 229); *De Vries* v. *Conklin*, 22 Mich. 258.

The other assignments of error in relation to the charge relate to isolated sentences, which, while objectionable

standing alone, when taken in connection with the entire charge, could not have misled the jury.

We discover no reversible error in the record.

Judgment is affirmed.

The other Justices concurred.