PEOPLES WAYNE COUNTY BANK *v.* WESOLOWSKA.

1. HUSBAND AND WIFE—MARRIED WOMAN MAY MORTGAGE HER PROPERTY TO SECURE HUSBAND'S DEBT.

Married woman may give valid and binding mortgage on her individual property to secure payment of her husband's debt.

2. SAME—NOTICE OF PURPOSE DID NOT AFFECT VALIDITY OF MORTGAGE.

Validity of mortgage given by wife on her individual property to secure payment of her husband's debt was not impaired by fact that mortgagee knew purpose for which it was given.

3. SAME—VALIDITY OF MORTGAGE—COVERTURE.

Whether mortgage executed by wife on her individual property was given for her personal debt or that of her husband she cannot escape liability on ground of coverture.

4. MORTGAGES—FORECLOSURE—FRAUD—DURESS.

In suit to foreclose mortgage given by married woman, her claim that note and mortgage were obtained from her by fraud, misrepresentation, duress, and undue influence, *held,* without merit.

5. ALTERATION OF INSTRUMENTS—MORTGAGES—MATERIAL ALTERATION.

Insertion in deed, absolute on its face, recital that it was given as security, which was in accord with intent and purpose for which it was given, and conformed to recital in note, was not material alteration and did not affect its validity; no injury resulting to mortgagor.

6. MORTGAGES—FORECLOSURE—RIGHT TO INCLUDE TAXES PAID BY MORTGAGEE.
    Mortgagee is entitled to pay defaulted taxes and have amount thereof included in decree on foreclosure, although mortgage does not so provide.

Appeal from Wayne; Sample (George W.), J., presiding. Submitted October 23, 1931. (Docket No. 220, Calendar No. 36,088.) Decided December 8, 1931.

Bill by Peoples Wayne County Bank of Hamtramck, a banking corporation, against Barbara M. Wesolowska to foreclose a mortgage. Cross-bill by defendant against plaintiff to cancel a mortgage. Decree for cross-plaintiff. Plaintiff appeals. Reversed.

*Bulkley, Ledyard, Dickinson & Wright* (*Glenn D. Curtis*, of counsel), for plaintiff.

*Arthur G. Lodewyck* (*James E. McDevitt*, of counsel), for defendant.

NORTH, J. The Peoples Wayne County Bank of Hamtramck, as successor to the First State Bank of Hamtramck, filed its bill of complaint herein against Barbara M. Wesolowska, a married woman, to foreclose a mortgage. There was reference to a circuit court commissioner before whom testimony was taken. His findings of fact and law were adopted by the circuit judge. A decree was entered dismissing plaintiff's bill of complaint, and on cross-bill affirmative relief was granted defendant by way of cancellation of the instrument sought to be foreclosed. Plaintiff has appealed.

In March, 1923, Stanley W. Wesolowska, defendant's husband, solicited a loan of $5,000 from the

bank. It was arranged that the loan should be made
upon the promissory note of Mrs. Wesolowska in-
cident to which she deposited as collateral $6,000 in
liberty bonds. A cashier's check for $5,000 payable
to Mrs. Wesolowska was delivered to her. She in-
dorsed it and turned it over to her husband. He
indorsed and delivered it to the Delphi Speciality
Manufacturing Company, of which he was an officer,
and the company deposited it to the credit of its
bank account.

Again, in July, 1923, through defendant's hus-
band, she negotiated another loan from plaintiff in
the amount of $15,000, for which she gave her un-
secured note. At the time of making this loan she
gave to plaintiff a financial statement from which
it appeared she was possessed of sufficient property
to justify the credit extended to her. The proceeds
of this second loan were deposited to Mrs. Weso-
lowska's credit in plaintiff bank; and she in turn by
means of checks drawn on her account varying in
amounts from $25 to $3,000 passed the whole of this
loan to her husband. Plaintiff knew at the time of
making each of the above loans that defendant in-
tended to turn the proceeds over to her husband.
Within the next two and a half years following July,
1923, defendant borrowed from plaintiff various
other amounts which were for her sole use totaling
approximately $60,000. In the meantime payments
had been made on the first two loans above noted
sufficient to reduce them to $16,025. This sum, to-
gether with the unpaid portion of the later loans,
amounted on December 1, 1925, to $35,000, for which
plaintiff held defendant's notes. On the last-men-
tioned date, defendant gave plaintiff in lieu of the
notes it then held her note for $35,000, and at the
same time to secure its payment gave to plaintiff a

deed of certain real estate located at the corner of Canfield avenue and Hastings street in Detroit, Michigan. This deed was admittedly a mortgage and will be so denominated herein. It was recorded as a deed March 8, 1926. It was again recorded as a mortgage June 9, 1928. Defendant's note for $35,000 was not paid at its maturity. Renewal notes were given from time to time. The final note of the series was for $36,800 payable in 30 days. It was not paid at maturity, and the bill of foreclosure herein was filed August 9, 1930.

The only portion of defendant's indebtedness to plaintiff represented by her $35,000 note of December 1, 1925, and the renewals thereof, which she questions, is the $16,025 which is the unpaid portion of the two first loans aggregating $20,000. The balance of the indebtedness to the bank is admittedly defendant's obligation. In behalf of Mrs. Wesolowska it is urged as a defense that, being a married woman, her note and mortgage are void in whole or in part on the theory that she was only a surety as to the first two loans aggregating $20,000; and also that this mortgage is invalid by reason of its having been obtained through fraud, misrepresentation, duress, and undue influence.

Clearly we may base consideration of the first question on the self-evident fact that at the time this mortgage was given either Mrs. Wesolowska or her husband was indebted to the bank for this $16,025. If it was defendant's personal debt there is no legal obstacle in the way of her giving a valid mortgage as security therefor. *Hamilton* v. *Parent,* 152 Mich. 587. On the other hand, if this was her husband's debt or past-due obligation it is equally clear under the decisions of this State that defendant, though a married woman, could give a valid and

binding mortgage on her individual property to secure its payment.

"In this State there can be no doubt of the right and power of a married woman to convey her property in payment of, or security for, her husband's debt, and that such conveyance has a sufficient consideration." *Lewis* v. *Doyle*, 182 Mich. 141, 152, citing *Kieldsen* v. *Blodgett*, 113 Mich. 655.

See, also, *Watson* v. *Thurber*, 11 Mich. 457; *Just* v. *State Savings Bank*, 132 Mich. 600, wherein it is said:

"While a married woman may not become a surety for her husband, and thereby incur a personal obligation, she may pledge her property to secure his debt."

The validity of the mortgage given by defendant, a married woman, to secure the payment of her husband's debt, was not impaired by the fact that the mortgagee knew it was given for that purpose. *Frickee* v. *Donner*, 35 Mich. 151. Regardless of whether the mortgage was given for defendant's personal debt or that of her husband, she cannot escape liability on the ground of coverture.

Was defendant induced by fraud, misrepresentation, duress, or undue influence to give her note for $35,000 secured by the mortgage? As noted above, prior to December 1, 1925, defendant had given her notes to the bank in amounts which then totaled $35,000. Her liability on these notes in excess of $16,025 is admitted. The president of the bank telephoned defendant that the bank wanted security for her obligations. The following day defendant called at the bank, signed the $35,000 note, and executed and delivered to plaintiff the deed-mortgage

as security. The alleged fraud is thus stated in her counsel's brief:

"The president at the time informed her that she was legally liable for the total obligation, including the unpaid balance of the $5,000 and the $15,000 loans, to wit, $35,000, and that she would have to execute the deed immediately or she would be sued."

We think this falls far short of constituting fraud, misrepresentation, duress, or undue influence such as would invalidate defendant's note and the security given. Defendant's admitted personal liability at that time to the bank was nearly $19,000. Incident to giving the mortgage lien, the $6,000 of liberty bonds which defendant had deposited as collateral to her $5,000 note were returned to her. The only possible portion of the above-quoted statement of the bank's president that could have constituted a misrepresentation or fraud is that defendant "was legally liable for the total obligation." Assuming the statement was made as quoted, there is nothing in this record which even suggests that the bank official was not perfectly honest in expressing as his opinion that the defendant was liable to the full amount of the loan. At most it was only a statement of his opinion. It may be noted that in the intervening two and a half years since this part of the indebtedness accrued to the bank, payments had been made from time to time, and renewal notes given, as well as other notes for subsequent loans to defendant. If payments made were applied first on the oldest portion of the indebtedness, it may well be questioned if the assertion that defendant was liable for the full amount of the unpaid indebtedness was not true both in fact and in law. And it might well be held that defendant, though a married woman, was liable for the repay-

ment of money loaned- and paid to her by the bank or deposited to her credit in the bank notwithstanding she subsequently turned over to her husband the money so obtained. Further, it appears in the brief filed for Mrs. Wesolowska that, at the very time of the alleged fraud, "she denied liability for the $5,000 and $15,000 loan." If so, evidently she was not wholly without knowledge of her alleged legal rights. Also, it appears from this record that defendant gave other notes in renewal of the $35,000 note dated December 1, 1925. The last of these notes, the one here in suit, bears date June 7, 1930; it is for $36,800 payable in 30 days, and bears the notation "deed recorded as mortgage to Canfield avenue and Hastings street property." Defendant testified she wrote this phrase in the note with her own hand. She testified "I copied it from something else, other notes; I always copied it." Thus it may fairly be inferred that defendant's prior notes given during the intervening years bore the same notation in her own handwriting. From this and other circumstances disclosed by the record, we are convinced that there is no merit to defendant's claim that her note and mortgage which plaintiff now seeks to foreclose were obtained from her either by fraud, misrepresentation, duress, or undue influence.

Plaintiff's right to foreclose the instrument here in suit is further challenged on the ground that it has been altered by plaintiff. As noted, it was first recorded as a deed March 8, 1926, and again recorded as a mortgage June 9, 1928. Between these two dates some of plaintiff's agents or employees inserted in typewriting immediately following the description:

"This deed is given to secure a note of $37,000 to First State Bank of Hamtramck or its renewals thereof."

Defendant stresses the claim that at the time this deed-mortgage was given to the bank her indebtedness was only $35,000, and the recital inserted in the instrument raises the amount secured to $37,000, hence it is urged the alteration was presumably fraudulent. However, the record discloses that at no time during the period within which this alteration occurred was defendant's indebtedness materially less than $37,000. While the proof is not as clear as might be desired, we think it fair to conclude, as above noted, that defendant's former notes contained the same provision as the last of this series, which recited:

"Hereby transferring and delivering to the holder of this note as collateral security, *for the payment of this and of any other liabilities of the undersigned to said payee,* holder or assigns, due or to become due, *or that may hereafter be contracted,* the following property, the value of which is ——— dollars. Deed recorded as mortgage to Canfield avenue and Hastings street property."

It is a fair inference from the record that the recital of which defendant complains was inserted in this instrument incident to its being recorded as a mortgage and for the purpose of fixing the amount of the mortgage tax to be paid. Defendant knew of her deed being recorded as a mortgage, and subsequently reimbursed the bank for the amount of the mortgage tax it had paid. The record contains no testimony tending to establish either an attempt or an intent to defraud by inserting the quoted recital in the deed. We think it was placed therein for a legitimate purpose. It conformed to the recital in defendant's notes; and did not constitute a material alteration. Instead, the statement inserted in the deed was in accord with the intent and purpose

for which it was given; and no injury resulted to defendant.

"It is well settled that, where the alteration is not such as to change the effect of the instrument, it is an immaterial alteration, and does not preclude recovery." *Prudden* v. *Nester,* 103 Mich. 540, citing cases.

See, also, 1 Jones on Mortgages (8th Ed.), pp. 129, 130. On page 129 the author states as "the more equitable rule that the instrument is not rendered void if the alteration was made by mistake, or without fraudulent intent."

Under the record in this case, the defense urged on the ground of alteration of the instrument cannot be sustained.

If, as we hold, the mortgage which plaintiff seeks to foreclose is valid, there is no merit in defendant's contention that the amount paid by the mortgagee for past-due taxes on the mortgaged property should not be included in the decree. It is not necessary that a mortgage should contain a specific provision authorizing the mortgagee to pay defaulted taxes to enable him to do so and have an additional lien therefor upon the mortgaged property. *G. F. Sanborn Co.* v. *Alston,* 153 Mich. 456.

The decree entered in the circuit court is set aside, and a decree of foreclosure will be entered in this court for the amount found to be due from defendant to plaintiff at the time of settling the decree. Appellant will have costs of both courts.

WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. BUTZEL, C. J., and FEAD, J., did not sit.