TURNER v. PEOPLES STATE BANK.

1. APPEAL AND ERROR—FINDING OF COURT—EVIDENCE—USURY.
   In suit to cancel mortgages, finding of court that principal sum of 7 per cent. mortgage had included the mortgage tax thereon *held*, correct.

2. MORTGAGES—CANCELLATION OF INSTRUMENTS—USURY—RENEWAL.
   In suit by mother and son to cancel renewal mortgage they had given bank on farm, son's claim that mortgage was void as to him because of want of consideration in that former mortgage, given by mother to the bank, contained in its principal sum part of a usurious interest charge in a previous mortgage, *held*, without merit, especially after sum claimed to have been usurious by son had been eliminated upon renewal of mortgage.

3. SAME—USURY PERSONAL TO MORTGAGOR.
   The question of usury, being personal to the mortgagor, cannot be raised by her grantee.

4. SAME—CANCELLATION—EQUITY—WANT OF CONSIDERATION.
   In widowed mortgagor's suit to cancel mortgage, claim that the giving of such mortgage in payment of her late husband's debt to defendant bank which she was not obligated to pay rendered mortgage void for want of consideration would not afford a basis for rescission or cancellation of such mortgage, in the absence of a showing of fraud or bad faith, where collateral which had been deposited as security for husband's debt was turned over to and accepted by her and was one of the considerations for the mortgage in question and no return of such collateral has been offered by her.

5. EQUITY—OFFER TO DO EQUITY.
   Party in a court of equity is not entitled to equitable relief until a showing is made that plaintiff is willing and able to do equity.

6. MORTGAGES—RENEWAL—COMPROMISE—CONSIDERATION.
   The voluntary execution of a renewal mortgage, in the absence of fraud, whereby mortgage covered less property than pre-

viously, reduced the rate of interest, did not require payments on the principal for a year, deducted a claimed usurious interest charge, and discharged the former mortgage constituted a full, complete and binding settlement by plaintiff mortgagors and a waiver of any previous differences of the parties as to the validity of the previous mortgage:

7. SAME—EXECUTION—DURESS—EVIDENCE.

In suit by mother and son to cancel mortgage they had given to defendant bank, evidence *held*, insufficient to justify any finding of fraud, coercion, undue influence or bad faith on the part of defendant in securing the signatures of plaintiffs to mortgage in question and the delivery of such instrument to the defendant.

8. ACKNOWLEDGMENT—CONVEYANCES—PURPOSE.

An acknowledgment is not necessary to give validity to a conveyance, the purpose thereof being to entitle the instrument to record.

9. SAME—MORTGAGES—FRAUD—DURESS.

The absence of a formal acknowledgment of a mortgage does not vitiate the instrument as between the parties thereto in the absence of fraud, duress or coercion.

Appeal from Genesee; Elliott (Philip), J. Submitted June 4, 1941. (Docket No. 53, Calendar No. 41,630.) Decided October 22, 1941.

Bill by Elizabeth Turner and Guy C. Turner against Peoples State Bank for cancellation of mortgages, accounting, and money decree. From decree discharging a mortgage as to Elizabeth Turner but not as to Guy C. Turner, plaintiffs appeal and defendant cross-appeals. Modified and remanded.

*Joseph R. Joseph, Stephen J. Roth, Dale C. Showley,* and *Graydon G. Withey,* for plaintiffs.

*Lewis Kearns,* for defendant.

CHANDLER, J. John Turner, deceased, the husband of plaintiff Elizabeth Turner and father of plaintiff Guy C. Turner, died August 30, 1925, owing

defendant $3,532.47 on promissory notes. These notes were the sole obligation of John Turner, and as security for the same a mortgage in the sum of approximately $5,000 on 120 acres of land running from one E. L. Beecher to John Turner and wife, Elizabeth, one of the plaintiffs, on land known as the Beecher farm, was assigned to defendant by both John and Elizabeth. This mortgage was foreclosed in chancery subsequent to John Turner's death and plaintiff Elizabeth was joined as a party plaintiff, and upon the sale of the property, which was bid off for $5,000, received and accepted the commissioner's deed in her name. The mortgage foreclosed was a second mortgage, the first mortgage being in the sum of $1,400, which first mortgage was given by plaintiff Elizabeth and her husband at a time when they were the owners of the so-called Beecher farm. We are unable to find anything in the record in this case disclosing as to whether or not any benefits accrued to Mrs. Turner or any of the interested parties as a result of this sale.

At the time of the death of John Turner, he and his wife, one of the plaintiffs herein, held as tenants by the entireties the farm which is the subject of this suit, and upon his death it became the sole property of Elizabeth as survivor. There were no assets in John's estate other than his interest in the Beecher mortgage held by the bank as collateral.

On December 29, 1926, about one and one-half years after the death of John, and two or three months after the commissioner's deed was issued to Elizabeth, she, Elizabeth, made a payment to the defendant bank on the obligations of her deceased husband amounting to about $1,298.87, and on the same day executed a mortgage to the bank covering the farm to which she had acquired a title on the death of her husband to secure payment of the in-

debtedness of her husband to defendant, said mortgage being in the sum of $2,500.

The money was paid and the mortgage executed under circumstances related by plaintiff Elizabeth to be as follows:

"At the time my husband died he owed the bank of Flushing them notes. I did not sign any notes myself except the $1,400 mortgage on the Randall place. That was that first mortgage that the record refers to. I think 1917 is about the time it was made. That mortgage was the first mortgage on that property that later came into the hands of Mr. Beecher. I went into Flushing and talked to Mr. Mann [then cashier of defendant] about a year after my husband passed away, sometime in 1926 I think. Mr. Mann said I would have to take up the notes that it was my duty to see that they were paid and I would have to do something or they would have to take some action to get the money. I made an offer, I asked him if he would take a small piece of property in Flushing, rental property, as collateral on the mortgage, and he said he would have to take it up before the bank directors and he could not let me know at that time. Later on I went back, he figured up the notes and I made the mortgage, he made the mortgage out. He did not seem to want to take my small place in Flushing. This place on which my mortgage was issued or given was my husband's property but we had a joint deed of all places. I was living on it at the time. I gave Mr. Mann a mortgage on it. As fast as I could I made payments on that mortgage."

It is claimed by plaintiffs, but denied by defendant, that the principal sum of this mortgage included a mortgage tax of $12.50. The interest rate was 7 per cent. annually. The trial court found and we are not inclined to disturb such finding that the claim of the plaintiffs as to the inclusion of this

mortgage tax in the principal sum of the mortgage is correct.

Subsequent to the execution of this mortgage, payments were made upon the obligation on both principal and interest until March 9, 1938, on which date the balance due thereon was $2,011.13, including interest and unpaid taxes.

On January 21, 1937, plaintiff Elizabeth by quitclaim deed conveyed the property covered in the above-mentioned mortgage to her son, Guy Turner, reserving to herself a life estate.

Prior to the time of the execution of the deed by Elizabeth to Guy, she had sold five acres off of the farm in question on a land contract on which a dwelling house had been constructed by the contract purchaser.

On March 9, 1938, plaintiff Guy Turner, who, since the death of his father, had had charge of his mother's affairs, notified the bank that his mother would make no further payments on said mortgage and note, because she had been so advised by her attorney. Later the reason for this notice was discussed and it was the claim of Guy to defendant that the mortgage and note were void because same were usurious by reason of the inclusion in said note and mortgage of the sum of $12.50, the mortgage tax. After some discussion between defendant's representatives and plaintiff Guy, it was agreed that credit should be given Elizabeth for the sum of $29.50, being the amount of said mortgage tax with interest from the date of the mortgage at 7 per cent. and on June 6, 1938, the plaintiffs executed a new mortgage covering the same property described in the first mortgage, excepting the five acres which had been sold by Elizabeth on a land contract, to secure the payment of the old debt, principal and interest amounting to $2,011.13.

Subsequent to the execution of this mortgage, and on October 12, 1938, the plaintiffs filed the bill of complaint herein praying for cancellation of both mortgages on the grounds of fraud and duress, it being alleged that the said Elizabeth executed the first mortgage by reason of certain false and fraudulent representations made to her by defendant and its agents. No other allegation of fraud is made as to the first mortgage. The bill also asked for an accounting and a money decree against defendant for the return of payments made on the first mortgage. The bill further alleged that the defendant obtained the signature of plaintiffs to another mortgage bearing date June 9, 1938, and caused the same to be recorded in the office of the register of deeds of Genesee county. It is also alleged in the said bill of complaint that the acknowledgment of plaintiffs required by law to be attached to said mortgage of June 6, 1938, showed that same was executed as their free act and deed, when in truth and in fact the plaintiffs did not execute said mortgage as their free act and deed, and the plaintiffs did not acknowledge the execution of said mortgage as their free act and deed.

Defendant's answer to said bill of complaint denied the existence of any defects invalidating said mortgage and filed a cross bill praying for the foreclosure of same or, if it should be held invalid, for foreclosure of the first mortgage. Thereafter and on February 15, 1939, plaintiffs filed an amended bill of complaint so as to include the issue of usury as to the first mortgage, and denying that there was any consideration for the execution and delivery of the second mortgage.

Upon the submission of this case upon these pleadings, and proof taken, the trial court entered a decree upholding the validity of the mortgage executed

on June 6, 1938, as to plaintiff Guy Turner but decreeing that the execution of this mortgage was not the voluntary act of the plaintiff Elizabeth and discharging the same as to her.

From this decree both plaintiffs appeal, and defendant bank files a cross appeal.

Appellant Elizabeth insists that the court was in error in not awarding to her a money decree for all sums of money paid by her upon either of said mortgages and the note or notes of her deceased husband, because said mortgages were based upon his sole debt, and that there was no consideration or benefit running to her in return for the execution of the first mortgage bearing date September 29, 1926. She also insists that the second mortgage is invalid as to her because the execution of same by her was not her free act and deed.

Appellant Guy Turner insists that the mortgage of June 6, 1938, is void as to him, for the reason that the first mortgage contained in its principal sum part of the usurious interest charged in the mortgage of 1926, and is therefore void, and as a consequence the second mortgage should be decreed void for want of consideration.

We find as did the trial court that there is no merit to the contention made by appellant Guy Turner. It clearly and undisputably appears that defendant was making repeated demands upon plaintiff Guy for some arrangement about the payment of the first mortgage on the farm that had been deeded to him by his mother; that there was due upon said mortgage the sum of $2,011.13 after eliminating the sum of $29.50, which plaintiff Guy claimed was usurious. The new mortgage prepared by the bank was executed by Guy and was, as the trial court found, his voluntary act, and even though the first mortgage had been usurious as to plaintiff Elizabeth, the

question of usury being personal to the mortgagor cannot be raised by her grantee. *Central Holding Co.* v. *Bushman,* 238 Mich. 261; *Barney* v. *Tontine Surety Co.,* 131 Mich. 192; *Tuxedo Enterprises, Inc.,* v. *Detroit Trust Co.,* 272 Mich. 160, 167.

We are now confronted with the question of the validity of the first mortgage given by plaintiff Elizabeth to defendant to secure the payment of the balance due on her husband's debt. It is the contention of her counsel that she was under no legal obligation to pay, or secure to defendant the payment of, her husband's indebtedness to it, and that the mortgage was therefore void for want of consideration. While there is no direct testimony of any agreement between Elizabeth and defendant as to the disposition of the collateral (the Beecher mortgage), which was pledged by her husband and herself to secure his indebtedness, the circumstances clearly tend to show that such collateral was turned over to her through the commissioner's deed, accepted by her, and was one of the considerations for the mortgage in question. The question of adequacy or inadequacy of consideration in the absence of a showing of fraud or bad faith is no basis for rescission or cancellation of this mortgage. *Van Norsdall* v. *Smith,* 141 Mich. 355, 361; *Blake* v. *Blake,* 7 Iowa, 46; 41 C. J. § 199, p. 385.

Plaintiff Elizabeth is here seeking equitable relief. She is not entitled to such until she shows her willingness and ability to do equity, which in this case would be at least the return of the collateral she received through the execution and delivery to her of the commissioner's deed. This she did not do; neither has she ever made an offer so to do.

We will now review the contention of appellants that the first mortgage was void because tainted with usury by reason of the inclusion of the mort-

gage tax of $12.50 therein. This alleged fact is denied by defendant, but in the determination of this cause we are assuming that such was the case. However, this was known to the plaintiffs for several months before the giving of the second mortgage here involved, during which time there were negotiations for a settlement. The record shows that the plaintiff, Guy Turner, obtained legal advice regarding the question of usury prior to March 9, 1938, and on that date advised defendant that the plaintiffs would not make any further payments on the mortgage. This question of usury was discussed by Guy with defendant's cashier and settlement overtures were exchanged. It was finally agreed by defendant's representative to release five acres of the farm, which had been sold under contract; also to give plaintiffs credit for the claimed usurious amount; and a new mortgage was to be given. This was accordingly done as will be discussed later. The terms of this new mortgage differed materially from the provisions of the first mortgage in this, that the five acres, sold on a contract, on which a house had recently been built, was omitted from the mortgage; upwards of $29 which would be the amount of the mortgage tax plus interest, which was claimed as usurious, was deducted from the balance due on the first mortgage; the interest rate on the new mortgage was reduced from 7 per cent. to 6 per cent. and no payments on the principal were required during the first year, and the former mortgage was discharged. It is the claim of the defendant that this constituted a full, complete and binding settlement by the plaintiffs and a waiver of any previous differences they had as to the validity of the first mortgage. We are in accord with this contention unless it can be said that the execution of the new mortgage by plaintiff

Elizabeth was invalid by reason of fraud or duress used in securing the execution of the mortgage and/or unless the refusal of plaintiff Elizabeth to acknowledge the execution of said mortgage to be her free act and deed rendered said instrument void or voidable as to her.

The question of the acknowledgment of the execution of the mortgage by plaintiff Elizabeth is in dispute. She and her son claim that she refused to acknowledge its execution to be her free act and deed. Defendant's witnesses Mr. Ragan, the cashier, and Paul Sheppard, assistant cashier, testified to the effect that Mrs. Turner did acknowledge the execution of the said mortgage to be her free act and deed. The trial court resolved this conflicting evidence in favor of plaintiffs and made a finding that Elizabeth declined to acknowledge the execution of the mortgage to be her free act and deed, and that the execution of the same by her was not her voluntary act, but did find that the execution thereof was the voluntary act of plaintiff Guy. In determining whether this finding was justified from the facts before the trial court, we quote in full the testimony of Elizabeth as to the circumstances under which she signed this second mortgage:

"I did not discuss with the bank the giving of this second mortgage that was given last June except with Mr. Ragan [then cashier of defendant]. I talked with Mr. Ragan about it when he came down to the house; he talked to my son mostly, but when he came to the house he had papers made out and I signed them and I thought it was the best thing to do, I had to have some way to pay those bills. Mr. Ragan came to my home I think probably about 5 o'clock in the evening, no one but myself and my son Guy were at home. I was cooking supper. I was not in the room when they came, I heard Mr.

Ragan talking to my son, it was perfectly natural for me to go in and see. He wanted me to sign the mortgage and Guy thought it would be the best thing for me to do, the only thing to do, and I signed it and Mr. Ragan put the mortgage note before me, asked me to sign it, told me where to put my name. I asked Guy if I should sign it, and why I should sign it and he said, 'Just do what you think is best.' I laid the pen down and went into the kitchen and I did not sign it. I did not sign the mortgage note, only the mortgage. While I was in the kitchen Guy opened the door and he said, 'There is mother, you ask her.' He asked me if I would sign the note with my own free will and action and I said, 'No, I certainly did not.' He asked if I signed the mortgage of my own free act, will and action, and I said, 'No, I certainly did not.' He turned around to his assistant and he said, 'We are no better off than we were before,' that is all the conversation I ever had with him about it. I stayed in the kitchen; he went back in the living room, got his things together and went away almost immediately."

On cross-examination Mrs. Turner testified:

"At the time I executed the mortgage of 1926 I owned the property covered by the mortgage. My son, Guy Turner, was living with me at that time. I talked to my son, Guy Turner, about that mortgage a good many times. I told him I would never put a mortgage on the place, there never has been one and we won't put one on. The only other person I talked with about that mortgage was Mr. Mann.

"Q. At the time of making this 1938 mortgage, Mrs. Turner, you say that you told Mr. Ragan you did not sign that of your own free will and accord, is that true?

"A. No, I did not. I signed it because I had to do something to pay those bills; I supposed that it was the only way out. Mr. Ragan did not tell me I had to sign it. He said it would be very much better

if I did than if I did not sign it, why, the bank would have to take action. My son did not tell me I had to sign it. I did not feel that anybody was telling me that I had to sign it any more than what Mr. Ragan said; he said that if I did not sign it they would take some action to get the money. I knew that the former mortgage was in default.''

Taking the testimony of plaintiff Elizabeth as true, we are unable to find any fact or circumstance that would justify a finding that the execution of this mortgage was not the voluntary act of Mrs. Turner. The most that can possibly be claimed by this testimony is that Mrs. Turner declined to sign the note, that she signed the mortgage in reliance upon the advice of her son that it was the best thing for them to do, and upon being asked later if it was her free act and deed, said it was not. This circumstance might indicate that she reluctantly signed it, but is not sufficient to show any fraud, coercion or bad faith on the part of any one. After the execution of the mortgage, plaintiff Elizabeth made no attempt to prevent the delivery of the mortgage by her son, acting for himself and her, to the defendant.

Giving to plaintiffs' testimony as favorable a view as possible from the record herein, we discover nothing that could justify any finding of fraud, coercion, undue influence or bad faith on the part of defendant in securing the signatures of the plaintiffs to the mortgage in question, and the delivery of such instrument to the defendant. See 41 C. J. p. 436; *J. M. Robinson, Norton & Co.* v. *Randall,* 147 Ky. 45 (143 S. W. 769); *Peoples Wayne County Bank* v. *Wesolowska,* 256 Mich. 45.

The next question that presents itself, is: Does the absence of a formal acknowledgment of this mortgage by plaintiffs, or one of them, in the ab-

sence of fraud, duress or coercion, vitiate the instrument as between the parties thereto? This court has upon many occasions held that an acknowledgment is not necessary to give validity to a conveyance, the purpose of acknowledgment being to entitle the instrument to record. See *Brown* v. *McCormick,* 28 Mich. 215; *Price* v. *Haynes,* 37 Mich. 487; *People* v. *Marion,* 29 Mich. 31; *Jennings* v. *Reeson,* 200 Mich. 559; *Stamp* v. *Steele,* 209 Mich. 205; *Kerschensteiner* v. *Northern Michigan Land Co.,* 244 Mich. 403; *Fulton* v. *Priddy,* 123 Mich. 298 (81 Am. St. Rep. 201).

We arrive at the conclusion that the decree of the trial court dismissing plaintiffs' bill of complaint as to plaintiff Guy C. Turner must be affirmed, and the decree modified as to plaintiff Elizabeth by the dismissal of said bill of complaint as to her, and further modified by granting to defendant the relief sought in its cross bill praying for foreclosure of the mortgage executed by plaintiffs, and this cause is remanded to the trial court for appropriate proceedings on such foreclosure.

A decree may be entered in accordance herewith.

Defendant to recover costs.

SHARPE, C. J., and BUSHNELL, NORTH, STARR, WIEST, and BUTZEL, JJ., concurred with CHANDLER, J.

BOYLES, J. (*concurring*). I concur in the result. Plaintiffs claim that the note and mortgage given in 1926, as well as their joint note and mortgage of June 6, 1938, are void for want of consideration. The burden of proving failure of consideration is on the party asserting it. *In re McLaughlin's Estate,* 182 Mich. 707; 2 Jones on Mortgages, § 764, p. 24; 41 C. J. § 212, pp. 390, 391. Plaintiffs have failed to

establish the claim. If the notes and mortgages, given by plaintiffs to the bank, depended for consideration solely on the debt owed the bank by Elizabeth Turner's husband when he died insolvent, they would be void for want of consideration.

"A promissory note, given to a bank by a widow to take up a note given by her husband, who died insolvent, is void for want of consideration; the husband's note being worthless, in surrendering it nothing of value was parted with." *Newman & Snell's State Bank* v. *Hunter,* 243 Mich. 331 (syllabus) (59 A. L. R. 311).

The same rule applies to a mortgage. *Rosenberg* v. *Ford,* 85 Cal. 610 (24 Pac. 779).

However, Mrs. Turner received consideration from the bank for the 1926 mortgage when the bank allowed her to take title to the Beecher property. The bank held the Beecher mortgage, as security for her husband's debt, and, in effect, relinquished this security to Mrs. Turner.

The record sustains the conclusion that there was an understanding between Mrs. Turner and the bank to the effect that she was to give the bank a mortgage on her own property in consideration for this title. This has some support in the fact that the Turners did not question the validity of the 1926 mortgage until 12 years later, after they had given the bank the renewal mortgage in 1938.

I agree with Mr. Justice CHANDLER that plaintiffs' other claims are without merit.

Defendant may have a decree against both plaintiffs (cross-defendants herein) for foreclosure of the 1938 mortgage as prayed for in the cross bill, with costs of both courts.