WENDLAND v CITIZENS COMMERCIAL & SAVINGS BANK

Docket No. 78-2365. Submitted June 8, 1979, at Lansing.—Decided September 5, 1979. Leave to appeal denied, 407 Mich —.

Florence P. Wendland is the widow of Frederick Wendland, who owned Wendlands' Apparel, Inc. Florence was the nominal vice-president of the corporation but performed no corporate duties and allowed her husband to handle all of the couple's financial affairs until his death in 1976. Citizens Commercial & Savings Bank had loaned the Wendlands in excess of $300,000 over the years. When the business began to lose money Citizens Bank decided to call in these loans unless the Wendlands turned over certain collateral as security for the debt. Stock certificates, which were Florence's sole and separate property, were executed in blank by Florence and delivered to the bank as a pledge to secure the Wendlands' debt. In 1977, Florence brought an action against Citizens Bank seeking cancellation and rescission of her pledge on the theories that her separate property could not be used as collateral for the jointly executed notes which were the basis of the bank loans to the Wendlands and that the circumstances surrounding her execution of the stock assignments and promissory notes constituted a fraud. Summary judgment for defendant, Genesee Circuit Court, Harry B. McAra, J. Plaintiff appeals. The issue is whether, under the married women's property act, a married woman may pledge her solely owned stock as security for a promissory note signed jointly by her and her husband, or whether the common-law disabilities of coverture still apply to render such a pledge of her separate property void *ab initio* and unenforceable. *Held:*

1. Plaintiff is not entitled to the return of her stocks. The protective rules of coverture, that a married woman may not act as a surety for the debt of another and cannot contract to become personally liable on a debt unless some consideration flows directly to her separate estate, do not apply to a married woman's pledge of her separate property. Plaintiff's pledge of

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur 2d, Husband and Wife §§ 213-218.
[2] 41 Am Jur 2d, Husband and Wife § 160.

stocks falls within this exception. Defendant has the right to satisfy any debt remaining on the Wendlands' jointly executed promissory notes out of plaintiff's pledged securities.

2. Plaintiff's allegations are insufficient to establish a claim of fraud. The fact that she paid no attention to financial affairs is not sufficient. Furthermore, she failed to establish that she received any inducement or acted under any fraudulently promoted misapprehension of the circumstances surrounding her signature.

Affirmed.

1. HUSBAND AND WIFE — MARRIED WOMEN — CONTRACTS — SEPA-
   RATE ESTATES — SURETYSHIP — PERSONAL PROPERTY —
   PLEDGES.

   A married woman may not act as surety for the debt of her husband and she cannot contract to become personally liable on a debt unless some consideration flows directly to her separate estate; there is, however, a distinction between contracts for personal liability on a debt and contracts conveying a particular interest in separate property as security for a debt, and while a married woman may not become a surety for her husband and thereby incur personal obligation, there is no legal objection to a pledge of her property, including stocks, to secure his debt.

2. FRAUD — STOCK CERTIFICATES — ASSIGNMENTS — FRAUDULENT
   INDUCEMENT — BURDEN OF PROOF.

   Allegations are insufficient to establish a claim of fraud where there is no proof of inducement or that the claimant acted under any fraudulently promoted misapprehension of the circumstances surrounding her signature on an assignment of stock certificates as security for her and her husband's joint debt.

*Cumings & Johnston,* for plaintiff.

*Winegarden, Booth, Ricker, Shedd & Haley,* for defendant.

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Danhof, C.J. This case presents a significant issue concerning the extent to which contractual disabilities of coverture stemming from our common-law legal heritage continue to restrict women under the married women's property act, MCL 557.1; MSA 26.161, and the cases interpreting that act.

Plaintiff is the widow of Frederick Wendland, who was proprietor and sole stockholder of a now defunct chain of stores in Flint, Michigan, incorporated as Wendlands' Apparel, Inc. Plaintiff was the nominal vice-president of the corporation, but performed no corporate duties and allowed her husband to handle all of the couple's financial affairs until his death on June 23, 1976.

Over the years, the Wendlands had borrowed in excess of $300,000 from defendant bank on jointly executed, personal unsecured notes. Defendant customarily deposited the proceeds of these loans directly into the account of Wendlands' Apparel, Inc. During the early 1970's, the business began consistently losing money and defendant eventually requested security for the Wendlands' debt. One of defendant's officers informed Mr. Wendland that unless he turned over possession of certain securities comprising the bulk of the Wendlands' net worth, defendant would call in the loans. These securities were actually plaintiff's sole and separate property.

Mr. Wendland personally delivered the securities to defendant in two blocks, one in 1974 and one in 1975, each stock certificate being accompanied by a stock assignment executed in blank by plaintiff. Although this procedure was sufficient to absolutely transfer the securities to defendant, MCL 440.8309; MSA 19.8309, the parties do not dispute that the transfer was intended as a pledge

of plaintiff's stock to secure the Wendlands' joint debt.[1]

In 1977, plaintiff instituted this action seeking cancellation and rescission of her stock assignments to defendant on the theories that her separate property could not be used as collateral for the jointly executed notes and that the circumstances surrounding plaintiff's execution of the stock assignments and promissory notes constituted a fraud upon her. After plaintiff and two of defendant's employees had been deposed, the trial court granted defendant's motion for summary judgment pursuant to GCR 1963, 117.2(1). Plaintiff appeals as of right.

The pivotal legal issue is whether, under the married women's property act, MCL 557.1, a married woman may pledge her solely owned stock as security for a promissory note signed jointly by her and her husband, or whether the common-law disabilities of coverture still apply to render such a pledge of her separate property void *ab initio* and unenforceable.[2] If the latter proposition is true, plaintiff is entitled to the return of her stocks. If not, defendant has the right to satisfy any debt remaining on the Wendlands' jointly-executed promissory notes out of plaintiff's pledged securities, pending our secondary inquiry into whether a fraud was perpetrated on plaintiff by defendant or her husband.

The roots of the instant controversy are mired in the common-law doctrine, formerly accepted in

---

[1] According to the deposition testimony of defendant's credit analyst, defendant's records revealed that the Wendlands received no further loans at the time of the stock certificate deliveries. Defendant did, however, subsequently loan the Wendlands more money.

[2] See 41 Am Jur 2d, Husband and Wife, §§ 213-226, pp 183-193, and 41 CJS, Husband and Wife, §§ 343-360, pp 828-843 for general background information on this problem.

Michigan, that marriage resulted in unity of person as between husband and wife, the husband alone controlling all of his and his wife's actions and property. By virtue of her married state, the wife "lost entirely all the legal incidents attaching to a person acting in her own right", including the right to separate ownership of property and the power to make personally binding contracts, *Burdeno v Amperse,* 14 Mich 90, 92 (1866); *Tong v Marvin,* 15 Mich 60, 66 (1866); Note, *The Impact of Michigan's Common-Law Disabilities of Coverture on Married Women's Access to Credit,* 74 Mich L Rev 76, 78-79 (1975).

To remedy some of the injustices resulting from women's disabilities of coverture, the Michigan Legislature enacted a married women's property act. The key provision, unchanged since 1855, is today codified as MCL 557.1:

"That the real and personal estate of every female, acquired before marriage, and all property, real and personal, to which she may afterwards become entitled by gift, grant, inheritance, devise, or in any other manner, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations and engagements of her husband and may be contracted, sold, transferred, mortgaged, conveyed, devised or bequeathed by her in the same manner and with the like effect as if she were unmarried."

This provision granted married women significant control over their separate property and the concomitant power to contract with regard to that property. Michigan courts, however, early established that the forerunner of MCL 557.1 had not conferred upon married women a "general capacity to contract". *West v Laraway,* 28 Mich 464, 465 (1874). The purpose of the statute was primarily to protect the wife in the enjoyment and disposal of

her property for her benefit and that of her family free from her husband's potentially pernicious control. *De Vries v Conklin,* 22 Mich 255 (1871), *Artman v Ferguson,* 73 Mich 146; 40 NW 907 (1888). The remedial legislative design was to re- move a married woman's contractual disabilities only insofar as they might operate unjustly and oppressively to subject her separate property to dissipation by her huband or another. *De Vries, supra.*[3]

In keeping with this protective, limited interpre- tation of statutory intent, Michigan courts have consistently held that a married woman may not contract to become personally liable on a debt except where the contract is related to her sepa- rate ownership of property nor can she act as surety for the debt of another. For example, in *De Vries, supra,* a creditor brought an action in as- sumpsit against a husband and wife on a promis- sory note jointly executed in consideration for the creditor's discontinuance of a suit against the husband alone. The Court held:

"[The] statute neither in terms authorizes a married woman to make herself liable personally for the debt of another, nor where no consideration moves to her can it

[3] In *Isabella Bank & Trust v Pappas,* 79 Mich App 274, 279; 261 NW2d 558 (1977), the Court noted that "it should be readily apparent to one and all that the married women's property act serves as a shield to familial security and protection of the innocent * * *". See *City Finance Co v Kloostra,* 47 Mich App 276, 282-289; 209 NW2d 498 (1973), for an analysis of the history and intent of the married women's property act together with a review of the reasons motivat- ing the drafters of the 1963 Michigan Constitution to include a provision purportedly abolishing all disabilities of coverture in this state. Const 1963, art 10, § 1. This Court concluded in *City Finance Co, supra,* that the constitutional provision was not intended to supersede the married women's property act, and that any contrac- tual disabilities of coverture not abrogated by that act still remain. See also generally, Note, *The Impact of Michigan's Common-Law Disabilities of Coverture on Married Women's Access to Credit,* 74 Mich L Rev 76-96 (1975).

be presumptively for her benefit. It was no part of the design of the statute to relieve her of common law disabilities for any such purpose." 22 Mich at 259.

Then, in *West, supra,* plaintiff sued husband and wife jointly upon their joint promissory note, which had been given to obtain an extension of time on the husband's debt. The Court upheld the wife's defense that her separate estate was not bound by the note, emphasizing that a married woman only had limited statutory capacity to contract.

"* * * She can only make such contracts as relate to her own property, while in regard to that she has very full powers. She may purchase property and bind herself for the purchase money * * * But she cannot become personally liable except on account of her own matters; and cannot enter into an undertaking jointly with her husband as his surety. *De Vries v Conklin,* 22 Mich 255. And she can never be held without affirmative proof that the contract is her own and within her powers * * *." 28 Mich at 465.

The principles enunciated in *West* and *De Vries,* that a married woman cannot be held personally liable on any contract unless some consideration flows directly to her separate estate and that she cannot act as surety for another, have proven remarkably hardy through the years. See, *e.g., Kitchell v Mudgett,* 37 Mich 81 (1877), *Johnson v Sutherland,* 39 Mich 579 (1878), *Koengeter v Holzbaugh,* 332 Mich 280, 283-285; 50 NW2d 778 (1952), *National Bank of Rochester v Meadowbrook Heights, Inc,* 80 Mich App 777, 782; 265 NW2d 43 (1978). Also compare *Kirby v Orloff,* 226 Mich 413; 197 NW 371 (1924), with *Monroe State Savings Bank v Orloff,* 232 Mich 486; 205 NW 596 (1925).

Nevertheless, beginning with *Watson v Thurber,* 11 Mich 457, 469 (1863), Michigan courts have also recognized the principle that "[there] is no legal objection to the making by a wife of a mortgage to secure her husband's debts". *Watson* accordingly allowed foreclosure on a wife's mortgage of her sole property given to secure her husband's preexisting debt. See also *Marx v Bellel,* 114 Mich 631, 633; 72 NW 620 (1897), where the Court seems to rule that a wife may create a lien upon her separate estate for her husband's debt. Numerous other decisions have similarly held that a married woman may mortgage or convey her separate property as security for her husband's or another's debt. See, *e.g., Damon v Deeves,* 57 Mich 247; 23 NW 798 (1885), *Lewis v Doyle,* 182 Mich 141; 148 NW 407 (1914), *Peoples Wayne County Bank v Wesolowska,* 256 Mich 45; 239 NW 367 (1931), *Shepard v Bestar,* 271 Mich 219; 259 NW 895 (1935), *Collateral Liquidation, Inc v Manning,* 287 Mich 568; 283 NW 691 (1939).

Moreover, even the Courts in *De Vries, supra,* and *West, supra,* distinguished a married woman's conveyance by mortgage to secure another's debt, which they found permissible under the married women's property act on the authority of *Watson,* from a contract making her personally liable without reference to her separate estate, which they ruled the act did not authorize. Their analysis logically implies a crucial distinction between a married woman's assignment of a specific interest in an identifiable part of her separate property, which is enforceable whether or not her property derives any direct benefit, and her contract for personal liability, which is only valid if it directly concerns her property.

The narrower question before us is whether a

pledge of a wife's sole property to secure an obliga-
tion jointly incurred with her husband falls within
the holding of *De Vries* and *West* or within that of
*Watson*.

We first note some language in *West* which,
while subject to attack as dictum, nevertheless
supports the contention that a married woman's
pledge of her separate property is enforceable:

"Those who deal with her [a married woman] on her
personal responsibility must be prepared to show that
she has acted within her legal powers. Those who desire
to obtain security on her property must obtain it as
they would if she were unmarried,—that is, by some
instrument describing the property and defining their
rights in it, *or by some pledge or transfer which is*
equivalent." 28 Mich at 470-471. (Emphasis supplied.)

However, in *Russel v Peoples Savings Bank,* 39
Mich 671 (1878), the Court refused to enforce a
transaction which otherwise appears to be a mar-
ried woman's assignment or pledge of a specific
portion of her separate property. The woman, who
was a stockholder in a corporation, endorsed over
and delivered to the creditor bank her solely held
note from another corporation as collateral for an
overdue note of the corporation in which she
owned stock. The Court labeled the transaction a
*contract of suretyship* which was unenforceable
because the married woman's separate estate had
not benefited by the contract.[4] See also *Mutual*

---

[4] The *Russel* Court reasoned that, even though Mrs. Russel was a
stockholder of the corporation which she sought to aid, a contract for
the benefit of the corporation was clearly distinguishable from a
contract for the benefit of her own property. While her attempt to
contractually ensure the corporate well-being might in turn benefit
her personal estate, the result was too indirect and incidental to
render her contract enforceable. See also *Koengeter v Holzbaugh,* 332
Mich 280; 50 NW2d 778 (1952), where the Court used the same
reasoning in holding that a wife's separate estate was not sufficiently
benefited to hold her severally liable on a promissory note jointly

*Benefit Life Ins Co v Wayne County Savings Bank,*
68 Mich 116; 35 NW 853 (1888), where the Court
held void a married woman's assignment to a bank
of her beneficial interest in two life insurance
policies as security for a debt jointly incurred with
her husband. The opinion emphasized both that
her separate estate had received no consideration
and that she was basically ignorant of the import
of her signature when her husband obtained it.

In contrast is the holding of *Just v State Sav-*
*ings Bank of Ionia,* 132 Mich 600; 94 NW 200
(1903), a case with facts very similar to those of
the instant situation. Mr. Just validly transferred
to his wife several certificates of stock of the Ionia
County Savings Bank. Mr. Just subsequently bor-
rowed $2,000 from defendant bank, gave his sole
note for the debt and delivered two of his wife's
stock certificates as collateral for the note along
with his wife's written consent to the pledge. The
Court held:

"While a married woman may not become a surety
for her husband, and thereby incur a personal obliga-
tion, she may pledge her property to secure his debt.
This she seems to have been willing to do, and is now
estopped from disputing the validity of the pledge." 132
Mich at 605. See also *Probst v Massachusetts Bonding*
*& Ins Co,* 230 Mich 543; 202 NW 974 (1925).

Apart from Mrs. Wendland's further allegations
of fraud, the only difference between the instant
case and *Just, supra,* is that Mrs. Wendland
pledged her stock to secure a joint debt rather
than her husband's sole debt. This difference is by
itself statutorily insignificant. According to the

executed with her husband, although the proceeds of the loan ob-
tained in exchange for the note provided working capital for a
corporation of which the wife was the sole stockholder.

applicable precedent, the important factor is the relationship between the liability incurred by the married woman on the debt and her separate estate, not merely the nature of the underlying debt.

We resolve any ambivalence in the case law in favor of following the *Just* ruling. Very early in the history of statutory interpretation of MCL 557.1, Michigan courts drew a logical distinction for purposes of validity between married women's contracts for personal liability on a debt in the nature of suretyship and their contracts assigning a particular interest in their separate property as security for a debt. A pledge of stocks falls in the latter category and is thus enforceable.

Regarding the secondary issue of fraud, plaintiff alleged below that her property was delivered to defendant without her knowledge or consent, and that if she signed any forms assigning her stock to defendant she only did so in the belief that her signatures were necessary to allow her husband's business to expand. The trial court found no genuine issues of material fact. It also concluded as a matter of law that neither defendant nor plaintiff's husband had defrauded plaintiff and that, absent any fraud, she was estopped from denying the validity of her stock assignments where she had signed the requisite documents at her husband's request.

We first note that, because of the factual record developed below, summary judgment, if appropriate at all, should have been awarded pursuant to GCR 1963, 117.2(3) and not under GCR 1963, 117.2(1). As for the undisputed factual basis of plaintiff's claim of fraud, she testified at her deposition that she recognized her signature on the stock assignments but said that she did not recall

signing them because she habitually signed all documents presented to her by her husband without reading the contents or inquiring into them. She also stated that she had not been consulted when her stocks were pledged as security nor was she aware that the certificates had been delivered to defendant. Plaintiff did not allege any fraudulent intent on the part of her husband or defendant.

Plaintiff's allegations are insufficient to establish a traditional claim of fraud. See 12 Michigan Law & Practice, Fraud, §§ 1-11, pp 390-411. Plaintiff, however, relies on *Peters v Burt D Howe Co,* 237 Mich 261; 211 NW 639 (1927). In *Peters,* the Court apparently found that a wife had been induced to assign her sole interest in a land contract to her husband's creditor on the strength of her husband's representation that he would thereby obtain additional funds for his business. The Court held that where the purpose of the wife's assignment was actually to secure her husband's preexisting debt, she had been the victim of fraud.

There is a parallel between *Peters* and the present case in that, along with her stock assignments, plaintiff signed a Federal Reserve document indicating that the stock was being assigned to obtain a working capital loan rather than to secure the Wendland's preexisting joint debt. But the plaintiff stated that she did not read what she signed nor did she ask about the significance of any document. Her signature of the stock assignments was hardly induced by any misrepresentation in the Federal Reserve form. In short, plaintiff has not established that she received any inducement or acted under any fraudulently promoted misapprehension of the circumstances surrounding her signature. The fact that plaintiff paid

no attention whatsoever is not sufficient to raise a claim of fraud.

We recognize the harsh effect of our decision on plaintiff in this case. In many instances, the contractual restrictions sanctioned by the married women's property act may today operate as an anachronistic reminder to capable women of their lingering common-law legal inferiority. Plaintiff, however, professed no interest in or aptitude for financial matters and now invokes the underlying protective intent of the act. Despite our sympathy for plaintiff's situation, we do not believe it commensurate with either the weight of principled authority or with present legislative policy regarding the equal legal status of women to relieve plaintiff of the consequences of her act by finding her contractually disabled.[5]

Affirmed, costs to defendant.

---

[5] In particular, the Michgian Legislature recently ratified the Equal Rights Amendment and made it illegal to discriminate on the basis of, *inter alia,* sex and marital status in extending credit or granting a loan. See MCL 750.147a; MSA 28.344(1).

We hazard no opinion regarding the result in a case where remaining common-law contractual disabilities would directly conflict with recent statutory guarantees of their equal legal rights. But see Note, *Married Women's Access to Credit, supra,* fn 2 at 101-105.